## TEXAS DEPARTMENT OF MENTAL HEALTH AND MENTAL RETARDATION, Relator,

v.

## Honorable Paul R. DAVIS, Jr., Judge, Respondent.

No. 3–88–121–CV.

Court of Appeals of Texas, Austin.

Aug. 9, 1989.

---

Maureen Powers, Asst. Atty. Gen., Austin, for relator.

Paul R. Davis, Jr., Judge, Lloyd Doggett, Doggett, Jacks, Marston & Perlmutter, P.C., Austin, for respondent.

Before POWERS, GAMMAGE and ABOUSSIE, JJ.

ABOUSSIE, Justice.

Relator Texas Department of Mental Health and Mental Retardation (the Department) seeks a writ of mandamus directing respondent Judge Paul R. Davis of the 147th District Court of Travis County to vacate his order wherein he granted discovery of certain documents to Julio Espinoza, Sr., and Melania Espinoza, real parties in interest. The Department contends that the requested documents are attorney work product exempt from discovery under Tex.R.Civ.P. 166b(3)(a) (Supp.1989) and are protected by the attorney-client privilege under Tex.R.Civ.Evid.Ann. 503 (Supp.1989). We hold that the trial court did not abuse its discretion in granting discovery and deny the petition for writ of mandamus.

The Espinozas are the parents of Julio Espinoza, Jr., a severely retarded quadriplegic adult who drowned in a whirlpool bath at Travis State School on April 9, 1987. Apparently, within hours of the death, W. Kent Johnson, Director of Legal Services for the Department, requested an investigation and report of the incident. Travis State School and Department employees conducted tape-recorded interviews of several employees on April 9, 10, and 13, and compiled an undated report to Johnson. On April 29, 1987, the Department received notice of the Espinozas' claim, and the Espinozas' filed suit on May 11, 1987. The Department allegedly admitted negligence, but other issues remain in dispute.

In the course of discovery, the Espinozas sought production of "any notes, reports, memoranda, or other documents" pertaining to the occurrence "obtained by [the Department] through its employees" after the death, but before it received notice of the Espinozas' claim. The Department objected to producing the investigative report concerning the death, responding that, because it was "prepared at the direction of W. Kent Johnson," the director of legal services, the report is exempt from discovery under Rule 166b(3)(a) as "the work product of an attorney." The Department also invoked the attorney-client privilege of Rule 503(b).

Judge Davis conducted an *in camera* inspection of the questioned documents and examined an affidavit from Johnson. After reviewing the Department's proof, the trial court ordered production of "transcripts and tape recordings obtained [before April 29] in the course of ... routine post-death investigative procedures ... and other documents which the Court has reviewed *in camera*." The parties agreed to stay production pending disposition of this mandamus action. The issue presented is whether the trial court abused its discretion by ordering the production of the questioned report and underlying interviews.

We may not disturb the trial court's ruling unless we find a clear abuse of discretion and there is no adequate remedy by appeal. *Strake v. Court of Appeals*, 704 S.W.2d 746, 747 (Tex.1986); *Jampole v. Touchy*, 673 S.W.2d 569, 572 (Tex.1984). A trial court abuses its discretion when its ruling is so arbitrary and unreasonable as to amount to a clear and

prejudicial error of law. *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985). The relator who attacks the trial court's ruling must establish that the facts of the case and the applicable law permit the trial court to make but one decision. Mandamus will not issue to control the action of the lower court in a matter involving discretion. *Id.*

■ The party who seeks to limit discovery by asserting a privilege has the burden of proving the applicability of the particular privilege. *Jordan v. Court of Appeals for the Fourth Supreme Judicial District*, 701 S.W.2d 644, 648 (Tex.1985); *Peeples v. Honorable Fourth Supreme Judicial District*, 701 S.W.2d 635, 637 (Tex. 1985); *Giffin v. Smith*, 688 S.W.2d 112, 114 (Tex.1985). Because the record discloses that the Department met the procedural requirements of asserting the privilege, we need only determine whether the Department proved itself entitled to such privilege. *See Weisel Enterprises, Inc. v. Curry*, 718 S.W.2d 56 (Tex.1986).

The evidence the trial court ordered produced includes tape-recorded statements concerning the incident taken from several school employees by Mark Lett, described both as the Recreation Director and the chairman of the Client Abuse Committee for the school, and transcripts of those tapes. At least two other persons were present for some of the interviews, including Bill Connelly, Chief of Fire Safety and investigator for the Client Abuse Committee for the school, and Lana Norwood, identified as a Department employee from Client Rights and Services. All three persons compiled and signed a report of the information obtained, setting out a summary of each interview, comparing each person's version of the facts, reaching conclusions as to what transpired, and evaluating the performance of each employee involved. The record before this Court contains the documents and Johnson's affidavit, but no statement of facts.

The Department contends that the evidence sought to be protected is the work product of its attorney under Rule 166b(3)(a) and that its production violates the attorney-client privilege set forth in Rule 503(b). It does not rely upon any other investigative exemption such as party communication, Rule 166b(3)(d), or privileged information, Rule 166b(3)(e). The Department contends that Lett was the superintendent's representative and thus a representative of the client agency, whose communications to Johnson were clothed by the attorney-client privilege. The Department also asserts that Lett concurrently acted on Johnson's behalf and any documents he produced were the attorney's work product. The Department makes no representation concerning the role played by Connelly or Norwood.

Johnson's affidavit states in pertinent part:

On April 9, 1987, I was advised that Julio Espinoza, a resident of the Travis State School, had drowned in a whirlpool bath at the school. When the circumstances of Mr. Espinoza's death were explained to me, I formed the opinion that there was significant potential for litigation against the State and its employees.

For that reason, I immediately requested that an investigation be conducted and that the results of that investigation be reported to me. The report was to be used by my office and the Attorney General of Texas in defending the State and its employees in such litigation. This request was made verbally in a telephone conversation with Charles Delisle and in writing (see copy of Johnson to Delisle letter, April 9, 1987, attached).

I make requests of this sort only when I am convinced that litigation will ultimately be filed against the State and its employees. The investigations and reports which I request in these situations are separate from and completely outside the investigations and reports conducted by the Department's facilities pursuant to Department rule. While the investigations and reports required by Department rule are used by the Department to identify areas of concern and to support personnel disciplinary action, the investigations and reports done specifically at my request are used by my office and

the Attorney General only for legal defense purposes.

The Department first argues that the documents in question should be protected and are exempt from discovery as attorney work product under Rule 166b(3)(a). Few Texas cases have been decided solely on the basis of the work product exemption provided by Rule 166b(3)(a). Most cases which purport to do so actually are based upon the party communication exemption set out in Rule 166b(3)(d). *See Bearden v. Boone,* 693 S.W.2d 25 (Tex.App.1985, orig. mandamus); *Menton v. Lattimore,* 667 S.W.2d 335 (Tex.App.1984, orig. mandamus).

■ A trial court may not control work product. *Garcia v. Peeples,* 734 S.W.2d 343, 349 (Tex.1987). The term "work product" is not defined by the rule, but the doctrine generally protects against disclosure of specific documents, reports, communications, memoranda, mental impressions, conclusions, opinions, or legal theories prepared and assembled in actual anticipation of litigation or in preparation for trial. *Evans v. State Farm Mutual Automobile Insurance Co.,* 685 S.W.2d 765, 767 (Tex.App.1985, writ ref'd n.r.e.). The exemption is not an umbrella for material assembled in the ordinary course of business. *Id.; see Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). The work product doctrine protects materials prepared by the attorney or attorney's agent. *Wiley v. Williams,* 769 S.W.2d 715 (Tex.App.1989, orig. mandamus). Because the evidence in question was not prepared by Johnson or any attorney and no legal proceedings had been instituted, relator can prevail only if Johnson's agent prepared the information in anticipation of litigation. Even assuming the information compiled may be deemed to be the attorney's work, we hold that the trial court reasonably could have concluded that the interviews and report were not prepared in anticipation of litigation.

■ Only information obtained by a party upon good cause to believe a suit will be filed or after the institution of a lawsuit is privileged. *Robinson v. Harkins &*

*Company,* 711 S.W.2d 619 (Tex.1986); *Allen v. Humphreys,* 559 S.W.2d 798 (Tex. 1977). The mere fact that an accident has occurred, for example, is not sufficient to clothe all post-accident investigations with privilege. *Stringer v. The Eleventh Court of Appeals,* 720 S.W.2d 801, 802 (Tex.1986). As noted in *Phelps Dodge Refining Corp. v. Marsh,* 733 S.W.2d 359, 361 (Tex.App. 1987, no writ), "[a] good faith belief based on past experience that a suit may be filed does not establish 'good cause' so as to deny discovery where suit has not yet been filed."

■ This Court has observed that the determination of when litigation is reasonably anticipated is a matter of professional legal judgment made by the court in light of the specific facts of the case. *Wiley,* 769 S.W.2d at 718. The Texas Supreme Court recently announced a two-prong test for determining whether an investigative report claimed to be privileged as a party communication under Rule 166b(3)(d) was prepared in anticipation of litigation. In deciding whether a report was prepared in anticipation of litigation, we see no reason to differentiate between a report claimed to be work product versus one claimed to be a party communication. We therefore apply the test recently set forth by the Supreme Court in *Flores v. Fourth Court of Appeals,* 777 S.W.2d 38 (1989). The opinion states:

> Determining whether there is good cause to believe a suit will be filed, so that an investigation is done in anticipation of litigation, requires a two-prong analysis. The first prong requires an objective examination of the facts surrounding the investigation. Consideration should be given to outward manifestations which indicate litigation is imminent. The second prong utilizes a subjective approach. Did the party opposing discovery have a good faith belief that litigation would ensue? There cannot be good cause to believe a suit will be filed unless elements of both prongs are present. Looking at the totality of the circumstances surrounding the investigation, the trial court must then determine if the investi-

gation was done in anticipation of litigation. Unless there is an abuse of discretion, the trial court's ruling should not be disturbed.

Good cause thus requires proof of both (1) objective evidence and (2) a subjective good faith belief that suit would be filed. We hold that the trial court did not abuse its discretion in permitting discovery of the questioned items because the Department failed to produce any objective proof that the investigation was done at a time when it had good cause to believe that litigation would ensue and that the report was prepared in anticipation of that litigation.

The only evidence before the trial court supporting relator's anticipation of litigation is Johnson's affidavit. In the affidavit, he states, "[w]hen the circumstances of Mr. Espinoza's death were explained to me, I formed the opinion that there was significant potential for litigation against the State and its employees ... [and] [f]or that reason I immediately requested that an investigation be conducted." He further asserts, "I make requests of this sort only when I am convinced that litigation will ultimately be filed...."

Johnson's fears proved to be well-founded. Nevertheless, almost anytime someone is injured there may be "a potential for litigation." Johnson's statement implies that, in fact, he *routinely* requests an investigation and report "in these situations." The record does not reflect whether Espinoza's parents had even been informed of the death, much less their reaction, at the time Johnson requested the investigation. The fact that later developments confirmed Johnson's suspicions is not determinative. Considering the totality of the circumstances surrounding the investigation, the evidence fails to reveal an objective basis upon which the Department or its attorney could have anticipated the likelihood of future litigation.

We cannot say that the trial court's ruling to grant the motion to compel production is arbitrary and unreasonable so as to amount to a clear and prejudicial error of law. *Johnson*, 700 S.W.2d at 917. Applying the proper analysis, we conclude that

the Department did not conclusively establish that it had "good cause" to "anticipate litigation," even if Johnson in good faith believed it was likely. We hold that the trial court acted within its discretion when it deemed the tapes, transcripts and report, all of which were generated prior to relator's receiving notification of legal action by the Espinozas, discoverable.

The Department next contends that the documents ordered produced, particularly the report to Johnson, are protected by the attorney-client privilege. The Department failed to produce sufficient evidence in support of its claimed privilege.

The attorney-client privilege applies to "confidential communications made for the purpose of facilitating the rendition of professional legal services to the client" between the client or the client's representative and the lawyer or the lawyer's representative. Tex.R.Civ.Evid.Ann. 503(b) (Supp.1989). A representative of the client is "one having authority to obtain professional legal services, or to act on advice rendered pursuant thereto, on behalf of the client." Tex.R.Civ.Evid.Ann. 503(a)(2) (Supp.1989).

The purpose of the attorney-client privilege is to promote unrestrained communication and contact between an attorney and client in matters in which the attorney's professional advice or service is sought, without fear that these will be disclosed. *West v. Solito*, 563 S.W.2d 240 (Tex.1978). Only confidential communications are privileged. Rule 503 defines confidential communications as those not intended by the client to be disclosed to third parties other than those to whom disclosure is made in furtherance of the rendition of professional legal services.

Not all statements made by a client to an attorney are privileged. *Hayes v. Pennock*, 192 S.W.2d 169 (Tex.Civ.App. 1946, writ ref'd n.r.e.). Before a communication to an attorney will be protected, it must appear that the communication was made by a client seeking legal advice from a lawyer in his capacity as such, the communication must relate to the purpose for

which the advice is sought, and the proof, express or by circumstances, must indicate a desire in the client for confidence and secrecy. *Duval County Ranch Co. v. Alamo Lumber Co.*, 663 S.W.2d 627 (Tex.App. 1983, writ ref'd n.r.e.). Because it tends to prevent full disclosure of the truth, the application of the privilege is narrowly construed. *Duval*, 663 S.W.2d at 634.

The Department seeks to invoke the protection of the attorney-client privilege as to the results of the post-accident investigation it held immediately following Espinoza's death, because the Department's attorney requested the information and the results were reported to him. Johnson is the attorney from whom the Department claims to seek legal advice. The Department also attempts to rely on the lawyer's statements in an effort to prove its confidential intent as the client. After reviewing Johnson's affidavit, the circumstances surrounding the material sought to be discovered, and the documents themselves, we cannot say that the information ordered produced was conclusively shown to be protected by the attorney-client privilege.

Johnson's affidavit does not say who "advised" him of the incident. He was informed by an unidentified person or persons that Espinoza had drowned; he formed the immediate opinion that there was a potential for a lawsuit; he requested an investigation; the school's superintendent ordered that one be performed; and Lett investigated and reported the results to Johnson. At the time, no legal proceeding had been instituted. Indeed, there is no proof in the record, even in Johnson's affidavit, that the superintendent or any representative with the Department's authority sought Johnson's legal services, advice or counsel with respect to this or any matter, although the Department assumes the fact in its discussion. Johnson's professional legal position with relator, of course, is undisputed. Johnson initiated the request for information on his belief that the Department would require legal defense by his office or that of the attorney general in the future.

The Department's proof does not establish conclusively that those involved in preparing the report and communicating it to the attorney were client representatives, as defined in Rule 503(a)(2), entitled to be privy to confidential communication, with authority on behalf of relator to obtain professional legal services or to act on any legal advice the attorney might render. The Department asserts in its brief that Mark Lett was ordered to investigate by the superintendent, the Department's representative, and thus Lett also became a representative of the client, thereby authorized on behalf of the Department to engage in confidential communication with its attorney. Assuming this is true, the representative capacity and participation of the other two participants is unclear. The written report recites merely that at Johnson's direction the superintendent ordered an investigation, and further recites that the three persons named conducted an investigation. The record does not clearly establish whether all three did so on the superintendent's order, were persons entitled to engage in confidential communication, or were persons whose participation was needed in order to facilitate rendition of any legal services. We cannot determine, for example, on what authority the school's superintendent could order Norwood, who apparently was not employed at the school, to participate in the investigation. *See also Cameron County v. Hinojosa*, 760 S.W.2d 742 (Tex.App.1988, writ denied).

Most importantly, the record does not conclusively establish the Department's allegation that it conducted the investigation and conveyed to Johnson the evidence it now seeks to protect with the intent and belief that the communication was a confidential one between the Department and its attorney, although it agrees that it must meet that burden in order to prevail. The Department asserts that because its attorney requested an investigation "apart from the routine report required by the client agency," due to "extraordinary circumstances surrounding the death," and because the attorney correctly predicted that litigation was inevitable, Johnson's affida-

vit "establishes that this report was not prepared in the ordinary course of business and that it was accomplished within the parameters of the attorney-client privilege." In effect, the Department relies upon these assertions surrounding preparation of the evidence to support its position. Attached to the affidavit is what appears to be a copy of a letter from Johnson addressed to Charles W. Delisle, assistant superintendent of Travis State School, dated April 9, 1987, stating, "I am directing that the Travis State School conduct an investigation concerning the death of Julio Espinoza. Please inform those staff members participating in this investigation that the results are to be treated as confidential and are to be reported to me only." Without expressly so stating, the affidavit implies that Johnson wrote the letter and that he sent it to Delisle, presumably before the immediate inquiry. Our review otherwise discloses nothing to indicate that the Department intended any communication among its employees or by Lett to Johnson concerning the facts surrounding Espinoza's death to be confidential, although Johnson may have so intended, and there is nothing in evidence that any of those involved in the investigation acted under that belief.

Assuming the letter was sent and received, nothing in the record reflects that Johnson's directive to Delisle was conveyed to the superintendent, agreed to by him, or complied with, or that the investigation was conducted and the report prepared and delivered under that condition and with that intent. There is no evidence that the Department intended the interviews and report to be confidential or privileged; that the interviewer believed the information he gathered was confidential; or that Lett or either of the other two persons with access to the information who signed the report believed the information and report was confidential. Nothing on the report states that it is confidential.

The Department's petition asserts, "The report was prepared with the assumption that it was to remain privileged and confidential ... Relator's employees ... spoke ... in the belief that their statements would remain confidential." The Department complains that its employees will be compromised if their confidential statements are released. The record does not reveal that anyone interviewed was advised that the information they furnished would be held in confidence or to whom it would be revealed.

Our examination of the documents reveals that the employee interviews begin with an introduction by Lett in which he in substance states the following:

I am conducting this investigation by the direction of the legal department of the Texas Department of Mental Health and Mental Retardation. I have been ordered to do so by Dr. Victor Hinojosa, superintendent of Travis State School.

Aside from Lett's introduction, the interviews do not contain any special directives and appear to be ordinary witness statements. No one was encouraged to say or give more than a factual account concerning the event.

The thorough post-accident investigation in issue was conducted immediately after the death when an investigation ordinarily would be, and apparently was, done in the routine course of matters. The record includes only a reference to a report by the Death Review Committee, but the members of that committee, their investigation, and report are not before this court. Johnson in effect stated that "in these situations" he "make[s] requests of this sort" for legal defense purposes, separate from any other, when he is convinced litigation will be filed. The trial court, after reviewing all the proof, was unconvinced that this was a special, privileged communication between relator and its attorney made in confidence for the purpose of facilitating rendition of legal services, and instead found the information to be routine investigative material compiled in the ordinary course of an investigation following a death at the School and, therefore, was discoverable. We cannot say that the Department conclusively showed otherwise.

We cannot say from this record that the trial court abused its discretion by its rul-

ing in this matter or that we are presented a proper subject for mandamus. We may not disturb the trial court's ruling unless we find a clear abuse of discretion. *General Motors Corp. v. Lawrence,* 651 S.W.2d 732 (Tex.1983). A trial court abuses its discretion when its ruling is so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Johnson,* 700 S.W.2d at 917. The Department has not established that the facts of the case and the applicable law permitted the trial court to make but one decision.

The petition for writ of mandamus is denied.