BORING & TUNNELING COMPANY
OF AMERICA, INC. and Lee Arthur
Evans, Relators,

v.

The Honorable Felix SALAZAR, District
Judge of the 157th District Court,
Harris County, Texas, Respondent.

No. 01–89–00686–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 30, 1989.

Tom M. Davis, Jr., JoAnn Storey, Davis & McFall, P.C., Houston, for relators.

Before MIRABAL, WARREN and DUGGAN, JJ.

## ORIGINAL PROCEEDING ON PETITION FOR WRIT OF MANDAMUS

MIRABAL, Justice.

The relators seek to have this Court order the trial court to rescind an order issued in a personal injury case that grants discovery of certain documents. Relators claim that the documents are exempt from discovery because of investigative and attorney-client privileges.

The underlying dispute involves the death of three vehicle occupants, who died after their car collided with a company truck driven by Lee Arthur Evans. Evans and his company, Boring & Tunneling Company of America, Inc., are defendants in the lawsuit. After the accident, Evans was arrested on suspicion of driving while intoxicated. The accident occurred May 5, 1985; suit was filed December 9, 1985.

During discovery, the plaintiffs requested that the defendants produce certain documents. Initially, the trial judge, the Honorable Felix Salazar, granted a motion for protection requested by the defendants. The plaintiffs sought to have this Court order the trial court to rescind that protective order. This Court granted leave to file in that proceeding, but the day before the hearing on the mandamus, Judge Salazar rescinded the protective order and ordered the defendants to produce the disputed documents. His action made the mandamus proceeding moot, and accordingly, this Court dismissed that proceeding. *Aleman v. Salazar*, No. 01–89–00269–CV (Tex.App.—Houston [1st Dist.], June 22, 1989, orig. proceeding) (ordered not published). Relators, the defendants in the suit, then filed this proceeding, challenging the trial court's production order.

The documents that are the subject of this mandamus action, and the privileges alleged by the relators in their motion for protection, are as follows:

1.  Defendants' attorney Tom Davis' letter regarding the accident investigation to adjuster Johnnie Bass (May 9, 1985): attorney-client and investigative exemption;

2.  File memo of Tom Davis regarding the investigation (May 9, 1985): investigative exemption and work product privilege;

3.  Statement of Lee Arthur Evans (May 11, 1985): investigative exemption, attorney-client privilege, and witness statement privilege;

4.  Statement of Keith Evans, Lee Arthur Evans' son and passenger in his truck at the time of the accident (May 11, 1985): investigative exemption and witness statement exemption.

The evidence offered in support of the request for a protective order consists of affidavits from: W.D. Murphy, president of Boring & Tunneling; Johnnie Bass, claims adjuster for Boring & Tunneling's insurance company; and Tom M. Davis, Jr., partner of the law firm hired by the insurance company to represent Boring & Tunneling. In sum, their affidavits relate the circumstances surrounding their accident investigation, and explain that the company, adjuster, and lawyer did not follow their ordinary custom in handling a claim, but rather sought to prepare a defense in anticipation of litigation.

In addition, relators also submitted the disputed documents to the trial court and this Court for an *in camera* review.

### Mandamus Review

■ We must determine whether the trial court abused its discretion by ordering production of the disputed documents. We may not disturb the trial court's ruling unless we find a clear abuse of discretion and that there is no adequate remedy by appeal. *Strake v. First Court of Appeals,* 704 S.W.2d 746, 747 (Tex.1986); *Jampole v. Touchy,* 673 S.W.2d 569, 572 (Tex.1984). A trial court abuses its discretion when its ruling is so arbitrary and unreasonable that it amounts to a clear and prejudicial error of law. *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985). The relator who attacks the trial court's ruling must establish that the facts of the case and the applicable law permit the trial court to make but one decision. Mandamus will not issue to control the action of the lower court in a matter involving discretion. *Id.*

■ The party who seeks to limit discovery by asserting a privilege has the burden of proving the applicability of the particular privilege. *Jordan v. Fourth Court of Appeals,* 701 S.W.2d 644, 648 (Tex.1985); *Peeples v. Fourth Court of Appeals,* 701 S.W.2d 635, 637 (Tex.1985); *Giffin v. Smith,* 688 S.W.2d 112, 114 (Tex. 1985). We must determine whether relators proved themselves entitled to the privi-

leges. *See Weisel Enterprises, Inc. v. Curry,* 718 S.W.2d 56 (Tex.1986).

### Post–Accident Investigation Privileges

The defendants claim post-accident investigation privileges for all four documents. As interpreted by the supreme court in *Loftin v. Martin,* 776 S.W.2d 145 (Tex. 1989), *Stringer v. Eleventh Court of Appeals,* 720 S.W.2d 801, 802 (Tex.1986), and *Turbodyne Corp. v. Heard,* 720 S.W.2d 802 (Tex.1986), the privileges afforded post-accident investigations under Tex.R.Civ.P. 166b(3) are applicable if a suit has already been initiated, or if there is good cause to believe suit will be filed. The investigative privileges generally involve attorney work product, trial consultants, witness statements, and party communications. In applying the anticipation of litigation standard, there is no reason to differentiate between the investigative privileges. *See, e.g., Texas Dept. of Mental Health & Mental Retardation v. Davis,* 775 S.W.2d 467 (Tex.App.—Austin 1989, orig. proceeding) (no differentiation between work product and party communication privileges); *Toyota Motor Sales, U.S.A. v. Heard,* 774 S.W.2d 316 (Tex.App.—Houston [14th Dist.] 1989, orig. proceeding) (applying anticipation of litigation standard to work product and party communications privileges).

■ In asserting investigative privileges, the party seeking to avoid discovery has the burden to prove that statements or documents were obtained in anticipation of litigation by showing that there was good cause to believe suit would be filed. *Turbodyne Corp. v. Heard,* 720 S.W.2d at 803; *see generally* Cassidy & Rice, *Privileges and Discovery: Part One, The Expanding Scope of Discovery,* 52 Tex.B.J. 462 (1989).

The Texas Supreme Court has established a two-prong test for determining whether an investigative report, claimed to be privileged as a party communication under rule 166b(3)(d), was prepared in anticipation of litigation. *Flores v. Fourth Court of Appeals,* 777 S.W.2d 38 (Tex. 1989). The court stated:

The first prong requires an objective examination of the facts surrounding the investigation. Consideration should be given to outward manifestations which indicate litigation is imminent. The second prong utilizes a subjective approach. Did the party opposing discovery have a good faith belief that litigation would ensue? There cannot be good cause to believe a suit will be filed unless elements of both prongs are present. Looking at the totality of the circumstances surrounding the investigation, the trial court must then determine if the investigation was done in anticipation of litigation. Unless there is an abuse of discretion, the trial court's ruling should not be disturbed.

*Id.* Good cause thus requires proof of both (1) objective evidence and (2) a subjective good faith belief that suit will be filed. *Texas Dept. of Mental Health & Mental Retardation v. Davis,* 775 S.W.2d at 467. The mere fact that an accident occurred is not sufficient to establish good cause for anticipation of suit. *Stringer v. Eleventh Court of Appeals,* 720 S.W.2d at 802. Good cause to believe a suit will be filed requires some outward manifestations of future litigation by the party having a cause of action, not the party trying to avoid discovery. *Phelps Dodge Refining Corp. v. Marsh,* 733 S.W.2d 359, 360–61 (Tex.App.—El Paso 1987, orig. proceeding). Examples of outward manifestation may consist of the plaintiff's hiring an attorney or private investigator, or the plaintiff's beginning an investigation of the accident. *Id.* Past experience will not suffice to establish good cause. *Id.* The focus of the determination of whether a defendant has good cause to believe a suit will be filed is on the actions of the party having a cause of action, not on the privilege-invoking party's subjective determination that it is anticipating litigation.

In *Flores v. Fourth Court of Appeals,* 777 S.W.2d at 38, the supreme court held that the filing of a notice of claim for workers' compensation does not constitute litigation. In the opinion, the court emphasized the wide discretion of the trial court and the limited scope of mandamus review. *Id.* at 41.

In applying *Flores,* the Austin Court of Appeals found that the trial court did not abuse its discretion in ordering production of an investigation report requested by a state agency's director of legal services. *Texas Dept. of Mental Health & Mental Retardation v. Davis,* 775 S.W.2d at 471–72. The in-house lawyer made his request for an investigation within hours of the death that ultimately resulted in the lawsuit. The only evidence before the trial court supporting the relator's claim of anticipation of litigation was the in-house lawyer's affidavit, in which he stated that, upon explanation of the circumstances of the decedent's death, he "formed the opinion that there was significant potential for litigation against the State and its employees," and that he makes "requests of this sort only when I am convinced that litigation will ultimately be filed."

Apparently concerned with lack of evidence of the plaintiffs' actions that might indicate their intention to litigate, the Austin court noted that the record did not reflect whether the decedent's parents had even been informed of the death, much less their reaction, at the time the lawyer requested the investigation. *Id.* at 472.

*Phelps Dodge Refining Corp. v. Marsh,* 733 S.W.2d at 359, also presents facts similar to ours. The El Paso court considered the denial of a protective order in a case in which the relator's personnel director sought advice from a company attorney after the death of an employee who had been injured on the job. The attorney advised the personnel director to contact the OSHA office and to file appropriate documents with the workers' compensation insurance carrier. The attorney also advised that a lawsuit against the relator was likely and that he should interview the other members of the work crew that had been working with the decedent when he sustained the injury that resulted in his death. The personnel director interviewed those individuals, asking specific questions suggested by the attorney, and obtained written statements.

The court found that all of those documents were discoverable because there was not good cause to anticipate that particular lawsuit. *Id.* at 361. The *Phelps Dodge* court explained the rationale surrounding the holdings construing good cause to anticipate litigation:

> There should be some circumstances associated with the specific case to suggest a suit will be filed, or is at least being contemplated. Otherwise, the subjective speculative fears of the defendant, or the tactically motivated predictions of his attorney, will dictate the parameters of discovery.

*Id.* at 360.

The proof filed in our case fails the first prong of the *Flores* test in that it does not provide evidence demonstrating good cause to believe suit would be filed. The affidavits merely rely upon past experience and the explanation that the investigation was not conducted according to the usual custom. The focus of these affidavits by the defendants is the subjective determination that they were anticipating litigation. The defendants make no claims concerning specific actions by the plaintiffs in this lawsuit.

Here, the trial court could reasonably have found that the documents were not generated in anticipation of litigation, as that standard has been interpreted, and that the documents are not privileged on that basis.

Investigative privileges have been asserted as the sole reasons for exemption from discovery of the statement of the son, Keith Evans. We hold that the trial court did not abuse its discretion in ruling that this document is not privileged.

### Attorney–Client Privilege

In this mandamus proceeding, the relators also claim the attorney-client privilege for Davis' file memo regarding the investigation, the statement to Davis of Lee Arthur Evans, and Davis' letter to the adjuster.

Although the attorney-client privilege covers essentially the same people and protects essentially the same information, the privilege is distinct from the investigatory privileges. *See Bearden v. Boone,* 693 S.W.2d 25, 28 (Tex.App.—Amarillo 1985, orig. proceeding). To establish the attorney-client privilege, Tex.R.Civ.Evid. 503 does not require a showing of good cause to believe that litigation would ensue.

■ First, we address the application of attorney-client privilege to Davis' file memorandum. In their motion for protection before the trial court, relators asserted only the "work product privilege and investigation exemption under Rule 166b(3)(d)." They did not claim attorney-client privilege for the memo.

Relators assert that they did raise this privilege in the objections they filed to the deposition on written questions, and that the question of privilege was briefed by the plaintiffs in their response to those objections.

In a motion for protection, the party seeking to exclude any matter from discovery on the basis of an exemption or immunity must specifically plead the particular exemption or immunity claimed. *Peeples v. Honorable Fourth Supreme Judicial Dist.,* 701 S.W.2d 635 (Tex.1985); Tex.R.Civ.P. 166b(4). Failure to do so constitutes a waiver of any complaint of the trial court's action. *Peeples,* 701 S.W.2d at 637; *see National Union Fire Ins. Co. v. Hunter,* 741 S.W.2d 592 (Tex.App.—Corpus Christi 1987, orig. proceeding) (A claim of privilege only presented in a response to a request for production does not meet this requirement that the privilege be specifically pled.).

By failing, in their motion for protection, to identify particularly the attorney-client privilege concerning Davis' memo, relators waived any claims of attorney-client privilege. We therefore find that the trial court did not abuse its discretion in ordering production of Davis' May 9, 1985 memorandum to file.

In their motion for protection, relators specifically alleged attorney-client privilege concerning Lee Arthur Evans' statement to Davis, and Davis' letter to the adjuster. Thus, we may consider their claims of at-

torney-client privilege relating to these two documents.

■ With regard to Lee Arthur Evans' statement to attorney Davis, we must first determine whether the attorney-client relationship had been created when Evans gave the statement. Under Tex.R.Civ.Evid. 503, one must be a client before one may claim the privilege. Rule 503(a)(1) defines "client" as:

> a person ... who is rendered professional legal services by a lawyer, or who consults a lawyer with a view to obtaining professional legal services from him.

■ The basic purpose of the attorney-client privilege is to secure the free flow of information between an attorney and the client on matters involved in litigation, without the fear that such details of their communication will be disclosed. *West v. Solito*, 563 S.W.2d 240 (Tex.1978). Before a communication to an attorney will be protected, it must appear that the communication was made by a client seeking legal advice from a lawyer in his capacity as such, the communication must relate to the purpose for which the advice is sought, and the proof, expressly or by circumstances, must indicate a desire in the client for confidence and secrecy. *Duval County Ranch Co. v. Alamo Lumber Co.*, 663 S.W.2d 627 (Tex.App.—Amarillo 1983, writ ref'd n.r.e.).

■ The attorney-client privilege does not apply to a statement made by an insured to his insurance carrier. *See Hurley v. McMillan*, 268 S.W.2d 229 (Tex.Civ.App. —Galveston 1954, writ ref'd n.r.e.). Neither does the fact that Evans was an employee of Davis' client necessarily clothe the statement with the privilege. For example, in *Sterling Drilling Co. v. Spector*, 761 S.W.2d 74 (Tex.App.—San Antonio 1988, orig. proceeding), the court found that the attorney-client privilege did not apply to the taking of witness statements by a lawyer hired by a workers' compensation carrier on behalf of its subscriber. The witnesses were all employees of the subscriber company.

The evidence shows that attorney Davis was retained by the adjuster and was reporting to him. In his affidavit filed in support of the motion for protection, Davis said that he also represented Evans. Yet, at the beginning of taking the statement, Davis said to Evans, "I'll reintroduce myself. I'm Tom Davis, and I'm the lawyer that represents Boring and Tunneling Company, and we're here to talk about the accident that you were involved in...." The trial court could reasonably have decided from reading this statement that there was no relationship of attorney and client between Davis and Evans when Davis took Evans' statement. It does not appear that the communication was made as a result of Evans seeking legal advice from Davis, and except for Davis' statement in support of the motion for protection, there is no direct evidence that Davis represented Evans when he took Evans' statement.

If conflicting evidence is presented upon the issue of whether the attorney-client privilege applies to prohibit discovery, the decision of the trial court must be deemed conclusive. *Cameron County v. Hinojosa*, 760 S.W.2d 742 (Tex.App.—Corpus Christi 1988, orig. proceeding). Here, there is evidence to support the trial court's decision that the privilege did not protect Lee Arthur Evans' statement, and we must consider the trial court's ruling as conclusive on that issue.

■ Finally, we must determine whether the attorney-client privilege applies to Davis' letter to the adjuster.

Tex.R.Civ.Evid. 503(b) provides for the attorney-client privilege. Rule 503(b) states in part:

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitation of the rendition of professional legal services to the client and made (1) between himself or his representative and his lawyer or his lawyer's representative ...

Rule 503 defines confidential communications as those not intended by the client to be disclosed to third parties, other than those to whom disclosure is made in furtherance of the rendition of professional legal services.

Where an attorney-client relationship exists, the statements and advice of an attorney are as much protected as the communications made by the client. *Harrell v. Atlantic Refining Co.*, 339 S.W.2d 548 (Tex. Civ.App.—Waco 1960, writ ref'd n.r.e.) (a title opinion for company prepared by its attorneys on disputed lease, held privileged); *cf. Dewitt & Rearick, Inc. v. Ferguson*, 699 S.W.2d 692, 693–94 (Tex.App.—El Paso 1985, orig. proceeding) (privileges applied, but were found waived).

Here, Davis' letter to the adjuster was clearly made to facilitate the rendition of professional legal services to Davis' client. The letter itself, and the circumstances under which Davis prepared the letter, show Davis' desire for confidentiality and secrecy. There is no evidence that the letter has ever been disclosed to any third parties, other than representatives of Boring and Tunneling Company. Thus, the record conclusively shows that this letter falls within the ambit of the attorney-client privilege.

Accordingly, we conditionally grant the petition for writ of mandamus in part and order the trial court to rescind its production order insofar as it orders production of Davis' May 9, 1985 letter to adjuster Johnnie Bass. We are confident that the trial court will act in accordance with this opinion. The writ will issue only in the event he fails to comply. We deny all other relief requested.