O’CONNOR, Justice,
dissenting.
The majority holds that any communication made to a cleric is privileged. I disagree.
In the underlying suit, a medical malpractice case, the Schnepels (Plaintiffs) allege that Heidi Nicholson, M.D., and Edward M. Stephens, M.D. (Defendants), were negligent in delaying the treatment of Mr. Schnepel in that they failed to timely call a surgeon, which delay caused Mr. Schne-pel’s premature death.
During discovery, the Plaintiffs noticed the deposition of Rev. Shirl, the chaplain employed by Memorial Northwest Hospital (Hospital). The Hospital is not a party to this mandamus, but is a party in the underlying suit. During that deposition, Rev. Shirl testified that he spoke with Mrs. Schnepel alone and while others were present. When Rev. Shirl was asked about his conversation with Mrs. Schnepel, the Plaintiffs invoked the clergy privilege in Tex.R.Civ.Evid. 505. Reverend Shirl stated in his deposition that he was not going to testify about matters that were privileged and that the matters he was going to testify about fell outside the confidential clergy-communication privilege. Reverend Shirl said he would testify about what Mrs. Schnepel told him about her husband’s treatment when he was admitted to the Hospital. He also said the information he has is pertinent to Mrs. Schnepel’s claim that she was not told about her husband’s treatment. At the deposition, Rev. Shirl produced a copy of the Hospital’s policy regarding the clergy privilege. The Hospital’s policy provides that a communication is privileged when the person is seeking spiritual advice or counsel.
To prevent Rev. Shirl from testifying at his deposition, the Plaintiffs’ counsel threatened to sue Rev. Shirl individually and Memorial Hospital System, his employer, for an intentional tort and to seek exemplary damages. Reverend Shirl did not testify, and the Defendants sought a ruling from the trial court on the privilege. In the order signed on January 23, 1992, the trial court sustained the Plaintiffs’ objections based on privilege and held the matters about which the chaplain intended to testify were within the scope of the clergy-communicant privilege of rule 505.
The Defendants want Rev. Shirl to testify that Mrs. Schnepel told him she wanted her husband transferred to another hospital for surgery. The Defendants contend this testimony is necessary to impeach Mrs. Schnepel on her contention that the Defendants caused the delay in treatment. In *689 their application for mandamus, the Defendants state, “In her deposition, Mrs. Schne-pel denied having said that she wanted her husband transferred to another hospital for surgery.” On this issue, the Defendants contend Rev. Shirl should be permitted to testify.
Adequate remedy at law
The first issue in this mandamus is whether there is an adequate remedy at law for the matter sought to be corrected by mandamus. The majority refuses to address the issue of adequate remedy at law, as required by Walker v. Packer, 827 S.W.2d 833, 840 (Tex.1992). Before reaching the merits of the mandamus, the majority should address the issue of adequate remedy by appeal.
I would hold that under the recently articulated test in Walker, the Defendants do not have an adequate remedy at law. One of the situations described in Walker that will justify a mandamus is where the trial court disallows discovery, and the missing discovery cannot be made part of the appellate record. Id. at 843-844. In such a case, the supreme court has held mandamus may be appropriate because the remedy by appeal is inadequate. Here, when the Defendants attempted to take the deposition of Rev. Shirl, the Plaintiffs threatened to sue the Hospital and Rev. Shirl individually for an intentional tort and seek exemplary damages. Thus, without the resolution of this matter by mandamus, the appellate court will not have an adequate record on appeal.
Rule 505: Clergy Privilege
The second issue in this mandamus is whether Tex.R.Civ.Evid. 505 precludes disclosure of the communication made by Mrs. Schnepel to Rev. Shirl. As stated by the majority, there are no Texas cases interpreting rule 505. Thus, we should look to Texas cases interpreting other privileges and apply the holdings by analogy, and look to the cases interpreting the clergy privilege in other jurisdictions.
The party asserting a privilege from discovery has the burden to produce evidence about the applicability of the privilege to the communication. Giffin v. Smith, 688 S.W.2d 112, 114 (Tex.1985) (attorney-client privilege). In the context of the attorney-client privilege, this Court has held that before a communication to an attorney is considered protected, the party asserting the privilege must show that the communication (1) was made by a client seeking legal advice; (2) the client sought legal advice from the lawyer in his or her capacity as a lawyer; (3) the communication related to the purposes for which the advice is sought; and (4) the client intended the communication to be confidential and secret. Boring & Tunneling Co. v. Salazar, 782 S.W.2d 284, 289 (Tex.App.-Houston [1st Dist.] 1989, orig. proceeding).
By analogy, in the context of the clergy privilege, this Court should hold that before a communication to a minister is considered privileged, the party asserting the privilege must establish (1) the communication was made to a minister, (2) in his or her spiritual and professional capacity, and (3) with the expectation of confidentiality. Tex.R.Civ.Evid. 505; see, e.g., In re Grand Jury Investigation, 918 F.2d 374, 384 (3d Cir.1990); People v. Edwards, 203 Cal.App.3d 1358, 248 Cal.Rptr. 53, 56 (1988);[1] Rivers v. Rivers, 292 S.C. 21, 354 S.E.2d 784, 787 (Ct.App.1987);[2] Annotation, Com *690 munication to Clergyman as Privileged, 71 A.L.R.3d 794 (1976). Of the three elements, the Plaintiffs can satisfy only one: that Rev. Shirl is a minister. Because they cannot satisfy the other two, the Plaintiffs’ claim of privilege should be denied.
1. Communication was secular, not spiritual
Mrs. Schnepel, in discussing her husband’s treatment with Rev. Shirl, did not talk with Rev. Shirl in his capacity as a spiritual advisor. To be afforded protection from disclosure under rule 505, a communication to a minister must be in his professional capacity as a spiritual adviser.
Rule 505 provides: “A person has a privilege to refuse to disclose and to prevent another from disclosing a confidential communication by the person to a clergyman in his professional character as spiritual adviser.” Tex.R.Civ.Evid. 505(b) (emphasis added). The Plaintiffs’ burden, therefore, was to demonstrate that the communication made to the minister was made to him in “his professional character as spiritual adviser.” The Plaintiffs are attempting to prevent disclosure, not of a communication made to a minister in the role of spiritual advisor, but of statements made about Mrs. Schnepel’s husband’s medical treatment.
It is clear that Mrs. Schnepel did not seek Rev. Shirl for spiritual advice; the hospital staff asked him to attend to Mrs. Schnepel. Nothing in Mrs. Schnepel’s pleadings or response to the discovery motions indicates that she considered Rev. Shirl her spiritual advisor from whom she wanted spiritual advice. Mrs. Schnepel seeks to exclude his testimony simply because he is a minister. Because Mrs. Schnepel’s statements to Rev. Shirl were not motivated by religious or spiritual considerations, they were not made to him in the course of his duties as a minister. The mere fact that a communication was made to a minister is not enough to invoke the privilege. See United States v. Gordon, 655 F.2d 478, 486 (2d Cir.1981) (the testimony of a priest was admissible where the communication related to business relationships, not spiritual matters); United States v. Wells, 446 F.2d 2, 4 (2d Cir.1971) (a letter to a priest was not privileged in the absence of evidence that the purpose was to obtain religious or other ministration).
In Christensen v. Pestorious, 189 Minn. 548, 250 N.W. 363, 365 (1933), a minister was permitted to testify about a statement made by a party in the hospital, as here. In Christensen, the defendant, the defendant’s daughter, and the plaintiff’s intestate were in an automobile, driven by the defendant, that collided with a train. In the hospital on the minister’s visit to the defendant’s daughter, she told him that immediately before the collision, the plaintiff’s intestate called out, “the train.” The court permitted the minister to testify about the communication, holding that the defendant’s daughter had not asked for spiritual advice or comfort and the communication was merely the ordinary description of an occurrence. See also Masquat v. Maguire, 638 P.2d 1105, 1106 (Okla.1981) (a hospital employee’s conversation with nun about employee’s pending malpractice litigation was not privileged).
Statements made to a minister, unless made to the minister for spiritual guidance, are not privileged. By analogy, if a person makes a communication to a lawyer on a matter not related to legal advice, that communication is not considered to be privileged. See, e.g., Sterling Drilling Co. v. Spector, 761 S.W.2d 74, 76 (Tex.App.-San Antonio 1988, orig. proceeding) (witness statements given to a lawyer were not protected under the lawyer-client privilege). Here, Mrs. Schnepel, who was not seeking spiritual advice, cannot claim the privilege.
Mrs. Schnepel’s statements about her husband’s medical treatment cannot be exempted from discovery under the clergy privilege.
2. The communication was not confidential
Mrs. Schnepel, in discussing her husband’s treatment with Rev. Shirl, did not make a confidential communication to Rev. *691 Shirl. Before a communication may be privileged, the communication must have been intended to be confidential. Rule 505 requires that the communication be made privately and not intended for further disclosure. Here, Mrs. Schnepel’s communication to Rev. Shirl about her husband’s treatment was merely the discussion of the events occurring during her husband’s treatment. Mrs. Schnepel did not make the communication privately, and there is no evidence she intended to restrict its dissemination.
Under rule 505, a communication is defined as “confidential” if made privately and not intended for disclosure except to other persons present in furtherance of the purpose of the communication. Tex.R.Civ. Evid. 505(a)(2). The communication made by Mrs. Schnepel about her husband’s treatment was not intended to be confidential. The communications made by Mrs. Schnepel were made in front of other persons whose presence was not essential to any spiritual counseling. The presence of the nurses and the doctors during Mrs. Schnepel’s conversation with Rev. Shirl, preclude any finding that the conversation was intended to be a confidential communication to a cleric. See, e.g., Ledisco Financial Serv., Inc. v. Viracola, 533 S.W.2d 951, 959 (Tex.App.-Texarkana 1976, no writ) (no attorney-client privilege attaches to a communication to a lawyer in the presence of a third person who is not an agent or representative of the lawyer).
The majority holds that rule 505 contemplates that others may be present at the time the confidential communication is made. I agree so far. But, if other persons were present, the person seeking to exclude the evidence must prove they were present in furtherance of the purpose of the confidential spiritual communication. Mrs. Schnepel offered no such proof.
The majority suggests that if this Court were to decide that Mrs. Schnepel waived the privilege because medical staff were present, hospitals would need to furnish clergy-communicant conference facilities outside every waiting room. I disagree. If a person is seeking spiritual advice from a chaplain, the conversation may be temporarily suspended when a nurse or doctor enters the room. To continue discussing a spiritual matter in the presence of strangers violates one of the requirements of a confidential communication.
3. Offensive use of the clergy privilege
The Defendants contend the Plaintiffs are using the privilege offensively to prevent relators from learning whether the Plaintiffs’ mental anguish was caused by the Defendants or by the Plaintiffs’ own conduct. A party may not “use one hand to seek affirmative relief and with the other hand lower an iron curtain of silence” around the facts of the case. Ginsberg v. Fifth Court of Appeals, 686 S.W.2d 105, 108 (Tex.1985). I agree. In Ginsberg, the supreme court said the plaintiff could not assert the psychotherapist privilege to exclude information that would assist the defendant.
The Plaintiffs are trying to foreclose the discovery of facts of the case under the guise of the clergy privilege.
Summary
There is no evidence that the matters about which Rev. Shirl intends to testify are within the scope of the clergy-communicant privilege. One of the reasons the majority holds that the communication should not be disclosed is that it finds it unseemly that a minister would volunteer to speak about a communication that is detrimental to the person making the communication and favors the minister’s employer, the Hospital. That is not the issue. If the communication is not privileged, it is within the reach of discovery.
I would hold the trial court abused its discretion in refusing to allow Rev. Shirl to testify about Mrs. Schnepel’s communications to him. Mrs. Schnepel did not carry her burden to prove that she was entitled to the clergy privilege. See Giffin, 688 S.W.2d at 114.

. Some cases identify three elements to the clergy privilege. See, e.g., In re Grand Jury Investigation, 918 F.2d at 384; Edwards, 248 Cal.Rptr. at 56. In Edwards, for example, the privilege is considered to have the following elements: (1) the communication must be intended to be confidential; (2) it must be made to a member of the clergy who by his or her religious discipline is authorized to hear such communications; and (3) such clergy had a duty under the discipline of the religious organization to keep such communications secret. Edwards, 248 Cal.Rptr. at 56.

. Other courts identify four elements to the clergy privilege. In Rivers, for example, the privilege is considered to have the following elements: (1) the communication must be confidential; (2) it must be disclosed to an ordained minister, priest, or rabbi; (3) it must be entrusted to the minister in his or her professional capacity; and (4) it must be one that is necessary to enable the minister to discharge his or *690 her functions of the office. Rivers, 354 S.E.2d at 787.