### Ida Ott v. The State.

No. 5833. Decided May 19, 1920.

**1.—Murder—Manslaughter—Self-Defense—Right to go Armed.**

Where, upon trial of murder and a conviction of manslaughter, the court's charge on self-defense was in proper form, there was no reversible error. Following Tillery v. State, 24 Texas Crim. App., 261, and there was no error in refusing to instruct the jury upon the right of defendant to arm himself. Following Williford v. State, 38 Texas Crim. Rep., 393; Smith v. State, 81 Texas Crim. Rep., 368.

**2.—Same—Charge of Court—Retreat—Self-Defense.**

Where, the court in the main charge, instructed the jury that the defendant was in no event bound to retreat, in order to avoid the necessity of killing the deceased, it was not incumbent upon him to repeat it in his special charge.

**3.—Same—Evidence—Privileged Communication—Attorney and Client.**

Upon trial of murder and a conviction of manslaughter, the defendant should have been permitted to show that the deceased, in a conference with his attorney, preparing to bring suit for divorce against the defendant, made certain declarations to the effect that deceased sought to obtain the legal advice of the witness as to what punishment would likely be meted out to him in the event he killed his wife, etc., and should not have been excluded as privileged matter between attorney and client in the instant case. Following Ormon v. State, 22 Texas Crim. App., 604, and other cases.

Appeal from the Criminal District Court of Dallas. Tried below by the Honorable Robert B. Seay.

Appeal from a conviction of manslaughter. Penalty, three years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*Alvin M. Owsley,* Assistant Attorney General, for the State.
Cited cases in opinion.

MORROW, JUDGE.—Under an indictment for murder appellant was convicted of manslaughter, and punishment assessed at confinement in the penitentiary for a period of three years.

The deceased, Andrew Ott, was the husband of the appellant. The tragedy occurred on one of the streets of the city of Dallas. Six shots were fired by the appellant from a pistol. The first shot, fired while the deceased was walking in front of the appellant, took effect on the side of his head, back behind his ear, and was a fatal one. He fell at once, and other shots were fired into his body. Deceased, a short time before the homicide, had filed a suit for divorce against the appellant, and secured an injunction against her interference with him. He was living in adultery with another woman at the time he was killed. A long course of ill-treatment was described by appellant in her testimony, in which she claimed that the deceased first seduced her, and after marrying her required her to prostitute her person for his profit; that he had at one time wounded her severely by shooting her with a pistol, and had frequently threatened to take her life. Some of these matters were controverted, the State introducing evidence to show that the appellant was shot accidentally with her own pistol while she was undertaking to shoot deceased, and also that she had threatened and attempted to kill him on other occasions. She was a young woman. She claimed that frightened by his repeated and specific threats to kill her she obtained an automatic pistol and

learned to use it. On the morning of the killing she phoned to the place of business of the employers of deceased desiring, as she said, to get one of them to intercede with her husband, whom she still loved, and ascertaining that her husband was not at the place of business she went there for the purpose of an interview with his employers, and that while on her way she saw deceased walking on the street with a lady. As they were about to meet, the lady walked across the street and entered deceased's automobile. When they met, appellant said: "Who is your sweetheart?" Deceased replied: "None of your damn business who she is. I told you not to come down here, and God damn you I am going to get my gun out of my car and blow your God damn brains out," and uttering these words he started to run toward his car. Appellant said: "Andrew don't do that," she following him and asking him to wait. He continued his course until he had nearly reached the car, when, as she says "I pulled my gun and fired." The State's eyewitnesses heard none of the conversation, but said that while the appellant was about an arm's length behind the deceased she fired the first shot, and when he fell she fired the remaining shots, and then knelt down by his body, and uttered some endearing terms with reference to him, apparently being very nervous and excited.

The criticisms of the court's charge on the law of self-defense, we believe, are without merit. This issue arose alone from appellant's testimony, and in applying the law to the facts the mind of the jury was directed specifically to the theory of the case upon which the appellant predicated the right of self-defense. The court said: "Now if you believe from the evidence, or have a reasonable doubt. that at the time the defendant killed the deceased that the deceased had started across the street in the direction of an automobile, and that he had said he was going to get his pistol and kill the defendant, and if it reasonably appeared to the defendant that the deceased was about to attack her in such manner that it reasonably appeared to her, as viewed from her standpoint, under all facts and circumstances within her knowledge, that she was in danger of losing her life or suffering serious bodily injury at the hands of the deceased," etc.

In submitting the converse of appellant's theory, to the effect in substance that the mere belief that she was in danger in the absence of reasonable grounds upon which to base such belief, testing the reasonableness of the grounds as viewed from her standpoint at the time, would not excuse her, we think there was no error. Appellant has referred us to no precedent supporting her contention that in this respect the court's charge placed upon the appellant's right of self-defense an unwarranted limitation. See Tillery v. State, 24 Texas Crim. App., 251; Ruling Case Law, Vol. 13, p. 816. There being no limitation placed in the charge of the court upon the right of perfect self-defense, there was no error in refusing to instruct the jury upon

the right of appellant to arm herself. Williford v. State, 38 Texas Crim. Rep., 393; Smith v. State, 81 Texas Crim Rep., 368

The court in the main charge having told the jury that the appellant was in no event bound to retreat in order to avoid the necessity of killing the deceased, it was not encumbent upon him to repeat it in a special charge.

The deceased, in his conference with his attorney preparing to bring suit for divorce against the appellant, made certain declarations which the appellant sought to reproduce on the trial through the attorneys, and their exclusion as privileged matter is made the basis of complaint. Part of these declarations were explanatory of the details under which appellant had received a pistol wound while living at San Antonio some time before the homicide. Aside from the question of privilege, we think the effort to prove the circumstances of the transaction mentioned by the declaration of deceased in the presence of the witness was not admissible, because obnoxious to the rule against hearsay testimony. The other declaration offered was to the effect that deceased sought to obtain the legal advice of the witness as to what punishment would likely be meted out to him in the event he killed his wife, and that in this connection deceased had expressed his belief to the witness that in the event he should elect to kill his wife, a jury would not affix his punishment any greater than confinement for five years; that the witness advised against such a course. We think this statement was not protected by the rule which excludes privileged communications between attorney and client. Ormon v. State, 22 Texas Crim. App., 604, 24 Texas Crim. App., 495; Everett v. State, 30 Texas Crim. App., 682; Underhill on Crim. Evidence, Sec. 175.

In the case of Ormon v. State, the accused complained to the attorney that one had been guilty of insulting language toward a female relative, and made inquiry as to the extent of the culpability in the event he slew the utterer of the language. The attorney read to him the statute on the subject. Subsequently, upon his trial for murder, the State was permitted to prove this transaction, the court in substance recognizing as the rule existing in criminal cases that the communications must be in the course of legitimate professional employment, and not communications made for the purpose of being guided in the commission of an offense, and that these rules obtain notwithstanding the innocent purpose of the attorney giving the advice; in other words, declaring that the public policy which prevented the disclosure of confidential communications between attorney and client would not seal the lips of the attorney who was consulted by one who, contemplating the commission of a crime, sought the advice of the attorney as a means of evading or modifying punishment.

In Everett's case, the deceased went to the offices of his attorneys, threatened the life of the accused, and asked the advice of his at-

torneys as to how to avoid the legal consequences of the killing of accused. This testimony was excluded upon the grounds that it embraced a confidential communication between attorney and client. The court on appeal overturned this ruling and made it one of the grounds for reversal.

In the instant case there was evidence of previous attempts on the part of deceased to take the life of the appellant, and on numerous occasions, according to the evidence, he had, with her knowledge, threatened to do so. She claimed that it was his practice to carry a pistol, and to leave it in his automobile when he was walking on the streets. The evidence that immediately before he was killed he declared that he would get his pistol and kill the appellant depended upon her evidence alone. From his acts, as described by her, in endeavoring to reach the automobile, and from the other facts in the case, the jury were to determine whether from her standpoint at the time there was reasonable apprehension of danger. To solve the doubt as to whether the actions of the deceased amounted to an attack, or a threatened attack, his declaration made to his attorney, expressing an intention, desire, or motive to kill the appellant, and seeking an expression of opinion as to the probable consequences, might have been of value to the jury. Upon this subject Mr. Wharton in his work on Evidence says:

"For the purpose, therefore, in cases of doubt in showing that the deceased made the attack, and if so, what motive, his prior declarations uncommunicated to the defendant, that he intended to attack the defendant, are proper evidence." Wharton's "Crim. Evidence," Vol. 2, Sec. 757, p. 1507.

The case of Wallace v. State, 44 Texas Crim. Rep., 301, was one in which the accused killed her husband. There was no proof of an actual demonstration on his part at the time, yet it was held that the exclusion of his uncommunicated threats was not warranted; and, generally speaking, we understand the rule to be that in cases of self-defense upon apparent danger, the prior hostile declarations of the deceased are to be received. The court properly allowed to come before the jury in the instant case the various difficulties, quarrels, threats, and encountered, in other words, allowed to be detailed the course of conduct between the husband and wife who were the parties to this tragedy. It was in the light of this evidence that the jury was called upon to solve the controverted questions; Hall v. State, 31 Texas Crim. Rep., 565; Medina v. State, 49 S. W. Rep., 380; Wallace v. State, 44 Texas Crim. Rep., 304; and the evidence excluded might have been of material aid. At all events, it was relevant, tending to show the state of mind of deceased toward appellant and, as we understand the record, was excluded upon what we regard as a mistaken theory that the witness in whose knowledge it existed was not privileged to disclose it because he had received it in conference between attorney and client.

We are constrained to the opinion that in rejecting the evidence an error was committed requiring reversal of the judgment.

*Reversed and remanded.*