## IDA OTT v. THE STATE.

### No. 6448.    Decided December 7, 1921.

**1.—Murder—Manslaughter—Continuance—Cumulative Testimony.**

Where, upon trial of murder, defendant's application for continuance showed that the absent testimony would be cumulative, and some of it hearsay, and besides the diligence was questionable, there was no error in overruling the application.

**2.—Same—Evidence—Immoral Conduct—Acts of Defendant.**

Where, upon trial of murder, it was the theory of the State that deceased had been trying to get away from defendant on account of her immoral conduct, and that of defendant was that her conduct was caused and procured by deceased against her wishes, and there was an application for suspended sentence, there was no error in admitting testimony as to her immoral association with other men, to show whether she was still living an immoral life, after she had forfeited her bond.

**3.—Same—Evidence—Manslaughter—Harmless Error.**

Where the rejected testimony could only affect the state of defendant's mind and could only be considered upon the issue of manslaughter, there was no reversible error in view of the verdict being for manslaughter.

**4.—Same—Requested Charge—Self-Defense—Carrying Arms.**

The requested charge upon defendant's right to arm herself was properly refused in view of the general charge placing no restriction upon her right of self-defense.

**5.—Same—Requested Charge—Injunction—Self-Defense—Charge of Court.**

Where, upon trial of murder, it appeared from the evidence that a short time before the killing deceased had filed suit for divorce against defendant in connection with which he obtained an injunction restraining her from interfering with deceased in any manner, there was no error in refusing requested charges on this phase of the case, as the court in his main charge limited the purpose of said evidence, and placed no limitation or restriction, because of the injunction being injected, on the question of self-defense.

Appeal from the Criminal Court of Dallas.    Tried below before the Honorable C. A. Pippen.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*R. G. Storey,* Assistant Attorney General, for the State.

HAWKINS, JUDGE.—Conviction is for manslaughter, with two years in penitentiary as punishment.

This case has been before us for review upon a former appeal. The opinion will be found reported in 87 Texas Crim. Rep., 382, in which the facts are fully set out, and will not be repeated here unless found necessary in discussing some bill of exceptions.

Continuance was sought by appellant for the witnesses F. Deering, Nona Daniels, and Jack Cresden. This is the fourth application for continuance. It is questionable if proper diligence is shown, but we dispose of it on other grounds. Deering's testimony is cumulative. The witness Culp testified to the same facts expected to be proved by Deering. Cresden's testimony would have been hearsay and inadmissible. Nona Daniels' evidence could have gone only to the issue of manslaughter if appellant had known of the facts which the witness was expected to relate. Conviction only being for manslaughter, and with the lowest punishment, we are unable to discover any injury.

While appellant was testifying she was asked by counsel for the State if she had not filled dates at Mrs. White's rooming house in Shreveport. She answered "no," but objection is urged to the question. She was also asked if it was not a fact that she had lived in Shreveport with a man named Lurette, not being married to him, to which she answered "yes." Appellant was making it appear to the jury that her immoral conduct in acts of prostitution during her husband's lifetime was distasteful to her, but had been forced upon her by her husband, and from which she claimed he had profited pecuniarily. The State had a right to show, if it could, that after she had killed him, and been released from his influence, she was continuing a life of prostitution, and thus combat the position she had assumed before the jury. Appellant had forfeited her bond, and had sought to explain that she was not in Louisiana trying to avoid trial, but was ill. Her association with Lurette was admissible on this issue. An application for suspended sentence having been filed, the jury was entitled to know whether she was still living an immoral life to determine whether such application should be favorably considered.

It was the theory of the State that deceased had been trying to get away from appellant on account of her immoral conduct; that of appellant, that her conduct was caused and procured by deceased against her wishes. She was asked upon cross-examination if she did "not know since her husband's return from France he had wanted to get rid of her and lead a clean Christian life," to which she answered "no." Upon redirect examination her counsel asked her if she knew whether or not her husband at the time of his death was living with Nona Daniels. The court sustained objection, and complaint is made of this ruling. If deceased had been living with Nona Daniels, while reprehensible, it would have furnished no legal justification for the killing. If this was a fact and appellant knew it, it could only have affected the state of her mind to be considered upon the issue of manslaughter. In view of the verdict and punishment we do not consider the exclusion of such evidence harmful, even if erroneous.

The requested charges upon appellant's right to arm herself were properly refused. No restrictions were put upon her right of self-de-

fense by the court's charge. This specific question was passed upon in the former opinion.

A short time before the killing deceased had filed suit for divorce against appellant, in connection with which he obtained an injunction restraining her from interfering with deceased in any manner; and from visiting him at his place of business and residence, and from attempting to have any relations with him whatever. The State put in evidence the citation and writ of injunction, on the theory that appellant killed deceased because he was trying to divorce her. The following special charge was requested:

"You are told as a part of the law of this case, that regardless of any injunction that may have been issued by any court and served on the defendant, if any, so far as defendant's rights in this case are concerned, she had the legal right to seek the deceased or go to his place of business for the purpose of securing an explanation of the trouble between them, or for the purpose of bringing about a reconciliation between deceased and herself."

Complaint is made because of the refusal to give this instruction. An examination of the general charge reveals that the court had instructed the jury with reference to the citation and writ in the following language:

"Now, I instruct you that if you consider said citation and writ of injunction for any purpose at all, you can only consider them for the purpose of enabling you, if it does, to determine the motive, if any, that the defendant had in her mind at the time she shot and killed the deceased, if she did, and the condition of her mind at the time of the killing, and for no other purpose."

If the court had not included in his main charge the foregoing limitation on the purpose of such evidence, then the refusal of the requested charge would have presented a much more serious question. But the contention is made that the charge given does not cover the issue presented by the requested one. In words so plain there was no probability of misunderstanding, the jury were told, in effect, you may consider this evidence for one purpose and only one. We would not be warranted in concluding that the jury either misunderstood or disregarded the instruction. It occurs to us the matter presents a situation like where accused was given the unrestricted right of self-defense there is no necessity to charge that arming would not deprive him of that right. Here the court in substance has told the jury if the killing occurred in a certain way appellant would not be guilty, no restriction or limitation because of the injunction being injected; the effect being to say, if she killed in self-defense, acquit her, injunction or no injunction. In view of the entire record and the charges given we have been unable to reach the conclusion that the refusal of the special charge was reversible error.

The judgment of the trial court is affirmed.

*Affirmed.*