**CIGNA CORPORATION, Cigna Fire Underwriters Ins. Co., Cigna Property & Casualty Ins. Co., Bankers Standard Fire & Marine Ins. Co., Bankers Standard Ins. Co., Century Indemnity Co., Cigna Ins. Co. of Texas, Indemnity Co. of North America, Insurance Co. of North America, Pacific Employers Ins. Co., Cigna Inc. Co., Cigna Lloyds Ins. Co., f/k/a American Lloyds, Ina County Mutual Ins. Co. & Clement R. Kennon III, Relators,**

v.

**Honorable Carleton B. SPEARS, Respondent.**

No. 04–92–00153–CV.

Court of Appeals of Texas, San Antonio.

Sept. 21, 1992.

---

ing of a deadly weapon is not before us.

Bob E. Shannon, Patrick O. Keel, Baker & Botts, Austin, Robert J. Malinak, David R. Poage, Houston, for relators.

Marvin G. Pipkin, Richard G. Tate, Kendrick & Pipkin, San Antonio, for respondent.

Before REEVES, C.J., and CHAPA and PEEPLES, JJ.

## ON RELATORS' MOTION FOR WRIT OF MANDAMUS

CHAPA, Justice.

This is an original proceeding in which relator, Cigna Corporation and its subsidiaries, seeks this court to protect its attorney-client and attorney work product privileges in discovery proceedings.

The underlying lawsuit was instituted by Tom McCorkle, an independent insurance agent, against Cigna for breach of contract. McCorkle alleged that Cigna induced him to enter its COMPAR program by which McCorkle became an exclusive insurance salesman for Cigna. McCorkle claimed that after he joined the COMPAR program Cigna cancelled the program.

In response to McCorkle's requests for production, Cigna offered some documents but claimed the attorney-client privilege protected it from producing certain memos to and between its in-house counsel and Cigna employees. Cigna also alleged that some of the documents had been prepared in anticipation of litigation involving other lawsuits. The trial court, Judge Carleton Spears, overruled Cigna's attorney-client objections because Cigna failed to prove that the employees of the corporation were its representatives as defined by TEX.R.CIV. EVID. 503(a)(2). Judge Spears also found that McCorkle established the fraud exception to the attorney-client privilege. Cigna brought this proceeding to prevent production of the documents it contends are privileged communications.

## MANDAMUS JURISDICTION

■ Mandamus is available only to correct a clear abuse of discretion by the trial court or to correct the violation of a duty imposed by law if the relator has no other adequate remedy at law. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992); *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985). An abuse of discretion occurs when the trial court acts so unreasonably and arbitrarily that its decision is a clear and prejudicial error of

law. *Walker v. Packer,* 827 S.W.2d at 839; *Johnson v. Fourth Court of Appeals,* 700 S.W.2d at 917. It is the appropriate remedy when the trial court has erroneously granted discovery of non-discoverable documents. Remedy by appeal in that case is ineffective, because once revealed, the documents cannot be protected. *Walker v. Packer,* 827 S.W.2d at 843.

## DOCUMENTS CREATED PRIOR TO ANTICIPATION OF THIS LITIGATION

■ The first issue to be decided is whether the attorney work product privilege can be applied to documents generated for other lawsuits or whether they must have been created with regard to the lawsuit in which the privilege is claimed. The supreme court has recently held that the privilege is of a continuing duration, and the documents need not have been generated specifically in defense of this case. *Owens–Corning Fiberglas v. Caldwell,* 818 S.W.2d 749, 751–52 (Tex.1991). However, to be protected by the work product privilege, the documents must have been created in anticipation of some litigation. *Texas Dep't of Mental Health & Mental Retardation v. Davis,* 775 S.W.2d 467, 471 (Tex. App.—Austin 1989, orig. proceeding).

The February 6, 1990, document from Linda S. Kaiser, while appearing to be attorney work product, does not show that it was prepared in anticipation of litigation—past or present. No evidence was offered to indicate this fact. Two other documents, which are not dated, not addressed to anyone, and not signed by anyone, appear to contain legal discussions. The final document, dated January 7, 1991, is a new file memorandum. The final documents—the two undated ones and the January 7, 1991, document—fail to disclose that they were prepared by an attorney. No testimony was given to establish that they were. Cigna failed to carry its burden as to these documents. The trial court did not abuse its discretion in ordering production of these documents.

## ATTORNEY–CLIENT PRIVILEGE: CORPORATE REPRESENTATIVE

We now reach the issue of major concern in this case: who is a corporate representative for purposes of the attorney-client privilege and how must it be established?

The attorney-client privilege exists only as it is found in the Texas Rules of Civil Evidence. TEX.R.CIV.EVID. 501(4). The attorney-client privilege is found in rule 503. It states:

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (1) between himself or his representative and his lawyer or his lawyer's representative ... (4) between representatives of the client or between the client and a representative of the client....

TEX.R.CIV.EVID. 503(b). The rule defines client as including a corporation. TEX. R.CIV.EVID. 503(a)(1). A representative of the client is defined as "one having authority to obtain professional legal services, or to act on advice rendered pursuant thereto, on behalf of the client." TEX.R.CIV.EVID. 503(a)(2).

■ The burden of proof falls on the party asserting the privilege and seeking to limit discovery. *Walker v. Packer,* 827 S.W.2d at 840; *Johnson v. Fourth Court of Appeals,* 700 S.W.2d at 917. This burden can be met by presenting evidence to the trial court in the form of testimony, affidavits, depositions, interrogatories, et cetera, or by the documents themselves. *See Weisel Enters., Inc. v. Curry,* 718 S.W.2d 56, 58 (Tex.1986). Communications are not presumed to be privileged: the only presumption contained in the rule is that "[t]he person who was the lawyer or the lawyer's representative at the time of the communication is presumed to have authority to claim the privilege but only on behalf of his client." TEX.R.CIV.EVID. 503(c).

There are no published Texas cases interpreting the definition of a representative of

the client under rule 503(a)(2).[1] In *Texas Dep't of Mental Health & Mental Retardation v. Davis*, 775 S.W.2d 467 (Tex. App.—Austin 1989, orig. proceeding), the court found that relator did not conclusively prove that the employees preparing a report and communicating it to the attorney were client representatives. The court said that the representative capacity and participation of the employees was unclear; that the record did not clearly establish whether they made the investigation on a superintendent's order, whether they were persons entitled to engage in confidential communications, or whether they were needed participants to facilitate rendition of the legal services; and that the record did not conclusively establish that the communication was intended to be confidential. *Id.* at 473.

■■■ The dissent in this case misplaces the burden of proof. It seeks to create a presumption that would shift the burden of proof away from the party seeking to deny discovery, contrary to established legal principles. *See Walker v. Packer*, 827 S.W.2d at 840; *Johnson v. Fourth Court of Appeals*, 700 S.W.2d at 917. Rather than establish the requirements of rule 503, the dissent would presume that the mere establishment that a person is an employee is sufficient to invoke the privilege. The dissent asks, "Is there any company in the world that has its employees leave their desks and go to meetings about legal issues outside their field?" We do not know, nor do we claim to know how all companies of the world run their businesses. This is not a matter for judicial notice. It is not for us to determine, without evidence, that a stenographer or assistant to an executive, by his mere presence at a meeting, has been clothed with authority to act on legal advice or to seek legal advice. The same applies to revisions of draft letters—these documents do not show on their faces that the drafter was acting within his authority to seek or act on the advice. The attorney-client privilege applies only to clients—and with the corporate client, that means a representative with the authority to obtain or act on legal advice. There is no presumption that documents are privileged, and there is no presumption that an employee is a person authorized to obtain or act on that legal advice or that an employee who does speak

---

1. Commentators have labeled two approaches to determining whether an employee is a representative of the corporation: the subject matter test and the control group test. The control group test apparently first appeared in *City of Philadelphia v. Westinghouse Elec. Corp.*, 210 F.Supp. 483 (E.D.Pa.1962), *mandamus and prohibition denied sub nom. General Elec. Co. v. Kirkpatrick*, 312 F.2d 742 (3d Cir.), *cert. denied*, 372 U.S. 943, 83 S.Ct. 937, 9 L.Ed.2d 969 (1963). Under this theory, a communication is privileged "[o]nly if the employee is empowered to control or take substantial part in a decision about any action the corporation may take upon the legal advice rendered (or is an authorized member of a group which possesses decision-making authority)." STEVEN GOODE ET AL., THE TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL § 503.3 (Texas Practice 1988). The subject matter test first appeared in *Harper & Row Publishers v. Decker*, 423 F.2d 487, 491–92 (7th Cir.1970), *aff'd*, 400 U.S. 348, 91 S.Ct. 479, 27 L.Ed.2d 433 (1971). This test "protects a communication made by an employee, at the direction of a corporate superior, for the purpose of securing legal advice. The subject matter of the communication must be within the scope of the employee's duties and must not be disseminated beyond those persons who need to know its contents." GOODE, *supra*, § 503.3. The focus is shifted away from the status of the employee (control group test) to the subject of the consultation. Thomas D. Anthony, Note, *Evidence—Privileges—Control Group Test Unacceptable as Standard for Assertion of Attorney-Client Privilege by Corporations*, 13 ST. MARY'S L.J. 409, 412–13 (1981).

Several authors have written that rule 503(a)(2) adopts the control group test, in spite of the Supreme Court's rejection of it in *Upjohn Co. v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) (rejected control group test but failed to supply new test). Rule 503, they argue, focuses on the status of the person as having authority to obtain or act on legal advice rather than on the subject matter of the communication itself. *See generally* GOODE, *supra*, § 503.3; HULEN D. WENDORF ET AL., TEXAS RULES OF EVIDENCE MANUAL V–32 (3d ed.1991); *Texas Rules of Evidence Handbook*, 20 HOUSTON L.REV. 287 (1983); Anthony, *supra*; Gerald G. Dixon, *The Corporate Attorney-Client Privilege: Alternatives to the Control Group Test*, 12 TEX.TECH.L.REV. 459 (1981); Note, *The Attorney-Client Privilege in the Corporate Context—Upjohn Co. v. United States*, 35 SW.L.J. 935 (1981); White, *Radiant Burners Still Burning: Attorney-Client Privilege for the Corporation*, 23 S.TEX.L.J. 293 (1982).

with counsel is authorized to do so on behalf of the corporation.

The dissent expresses concern that "[t]rial courts will spend their valuable time presiding over the hearing" to establish the corporation's entitlement to the privilege and will waste valuable court resources. Just as the plaintiff's case in chief must be proven, so must a party's entitlement to protection from discovery be proven. Our jurisprudence requires an advocate to establish his privilege against discovery. *See Walker v. Packer*, 827 S.W.2d at 840. The status of an employee as one having the appropriate authority can be established fairly easily through the affidavit of the corporation's chief executive officer. It is no more cumbersome or time consuming than establishing other predicates, such as proving up the requirements to admit a business record. We do not find it to be nonsense to require a party to meet his burden of proof. Further, we question the wisdom of correlating the amount and level of proof required with how quickly a case can be pushed through the judicial process.

We recognize that the attorney-client privilege is an extremely important privilege, designed to encourage the unrestrained disclosure of confidences between the client and the attorney without fearing that they will be disclosed by the lawyer in legal proceedings. *West v. Solito*, 563 S.W.2d 240, 245 (Tex.1978). However, this goal must be balanced against the ultimate objective of discovery, which is "to seek the truth, so that disputes may be decided by what the facts reveal, not by what facts

Veronica Cubit, Attorney
Ronald B. Myrter, Attorney
Linda Kaiser, Attorney
Lee H. Routledge, Attorney
Milton S. Wolke, Jr., Attorney
Yvette E. Thomas, Attorney
Ed K. Ota, Jr., Attorney
Brian T. Guthrie, Attorney
Jane Jacobs, Attorney

are concealed." *Jampole v. Touchy*, 673 S.W.2d 569, 573 (Tex.1984), *overruled in part on other grounds sub nom. Walker v. Packer*, 827 S.W.2d 833 (Tex.1992); *West v. Solito*, 563 S.W.2d at 243. The rules of evidence attempt to provide that balance by delineating exceptions to the general rule of discoverability; but the burden of proof remains with the party seeking to prevent discovery.

Thus, we turn now to the record to determine whether Cigna satisfied its burden of proving that its employees were its representatives pursuant to rule 503: that is, that each had either the authority to obtain professional legal services or the authority to act on advice rendered by counsel. It is paramount that we remember that, as to factual issues, we may not substitute our judgment for that of the trial court. *Walker v. Packer*, 827 S.W.2d at 839. In order to facilitate review of the documents, we have broken them into four categories: those involving unidentified persons, those involving identified employees of the corporation, those involving attorney to attorney communications, and those involving legal theses (work product).

### Unidentified Persons

■ The first category we will consider covers most of the documents submitted for in camera review. Veronica Cubit, an attorney for Cigna, identified sixteen employees of the corporation, including herself. She identified these persons as either an attorney representing Cigna or as an employee of Cigna. They are few, so we shall list their names and status:

David Nein, Employee
Karen Carfagno, Employee
Dwight Bechtel, Employee
Hank Pearce, Employee
Dan Rushton, Employee
Charles Angelo, Employee
Scott Fitkin, Employee

However, the documents on their face show that copies of most of the documents were sent to persons whom Ms. Cubit failed to identify in any manner. Copies of

these documents were addressed to persons who were not proven to be representatives of the client or even employees of the corporation. Thus, we hold that Cigna failed to meet its burden of proof of establishing that these people are representatives having the appropriate authority.[2]

### Identified Employees

██ Ms. Cubit, as stated earlier, did identify certain attorneys and employees with the corporation. Several documents were written by an employee to the attorney or vice versa or by one employee to another employee. No unidentified person is shown by the document to have been a recipient of it. The question here is whether the person identified as an employee of the corporation by Ms. Cubit's testimony has been proven by Cigna to meet the definition of representative.

Rule 503 requires proof of more than that the recipient of the document is an employee—the party seeking the protection

2. As best we can identify these documents, they are:

9–28–89  To Ronald B. Myrter from Charles H. Angelo;

10–23–89  To Charles H. Angelo from Ronald B. Myrter;

11–3–89  To Attendees of the RVP Meeting on 11–7–89 from Lee H. Routledge;

1–31–90  To COMPAR Project Team from Steve Flowers;

2–2–90  To Spike McKeeta from Ronald B. Myrter;

2–2–90  To Jim Garon from Ronald B. Myrter;

2–6–90  To Sal Calleri from Ronald B. Myrter, with attachments;

2–6–90  To M. Bailey, et al. from Lee Routledge;

2–6–90  To Spike McKeeta from Linda S. Kaiser;

2–7–90  To Distribution from Milton S. Wolke, Jr., with attachments;

2–8–90  To Distribution from Milton S. Wolke, Jr.;

2–8–90  To Stephen Flowers and Spike McKeeta from Milton S. Wolke, Jr.;

2–8–90  To Spike McKeeda [sic] from Linda S. Kaiser;

2–14–90  To J. Baylinson, et al. from Lee Routledge;

2–20–90  To Distribution from Spike McKeeta (attached to 2–23–90 privileged document);

2–21–90  Unaddressed, unsigned documents with undated, unsigned attachment;

3–2–90  To "Please See Distribution" from Charles H. Angelo;

3–5–90  To Ronald B. Myrter from Charles H. Angelo;

3–9–90  To Chris Taylor from Linda S. Kaiser;

3–12–90  To Don Hummell from Linda S. Kaiser (attached to 5–17–91 privileged document);

3–12–90  To Don Hummell from Linda S. Kaiser;

4–26–90  To J.R. McKeeta from Ronald B. Myrter;

5–1–90  To J.R. McKeeta from Ronald B. Myrter;

5–11–90  To John R. McKeeta from Dave Duclos;

5–15–90  To Spike McKeeta from Dave Duclos;

5–30–90  To Distribution from Milton S. Wolke, Jr., with attachments;

6–20–90  To Lee H. Routledge from Grace R. Schuyler;

6–26–90  To John R. McKeeta from Ronald B. Myrter, with attachments;

7–12–90  To Dan B. Rushton from Ronald B. Myrter;

7–17–90  To Ronald B. Myrter from Charles Angelo;

7–18–90  To J.R. McKeeta from Ronald B. Myrter;

7–19–90  To Ronald B. Myrter from Charles Angelo;

7–23–90  To Charles Angelo from Ronald B. Myrter;

10–18–90  To Ronald B. Myrter from Charles H. Angelo;

10–31–90  To G. Shepard, et al. from Ed K. Ota, Jr.;

11–19–90  To Ed K. Ota, Jr. from Carl Lambert, with attachments;

12–14–90  To J.R. McKeeta from Ronald B. Myrter;

1–2–91  To Tom Callanan from Ronald B. Myrter;

2–22–91  To Ronald B. Myrter from Scott N. Fitkin;

3–11–91  To Scott N. Fitkin from Ronald B. Myrter;

5–21–91  To Scott Fitkin from Ronald B. Myrter;

5–21–91  To Scott Fitkin from Ronald B. Myrter;

6–27–91  To Warren Coupland from Linda S. Kaiser;

7–1–91  To Scott from Ed;

8–21–91  To Spike McKeeta from Linda S. Kaiser;

9–3–91  To Underwriting Managers and Distribution Managers from Dwight Betchel;

11–8–91  To Don Edwards, et al. from David Nein;

4–25–XX  To Ronald B. Myrter from Spike McKeeta;

5–7–XX  To Spike from Clyde;

5–22–XX  Unaddressed, unsigned, handwritten document;

6–4–XX  Unaddressed, unsigned, handwritten document;

Undated  To Charlie from Karen Carfagno;

Undated  To Ron from Dave Duclos.

of privilege must prove the recipient employee to be a representative: that the person was authorized to obtain or to act on legal advice.

There is no evidence that any of these employees were so authorized. Ms. Cubit testified that the documents were intended to be circulated only among parties that would need to know. She identified one employee, David Nein, as "a client." However, when the trial court asked what was meant by client, Cigna's attorney, who was not a witness, responded, "the defendants.... They regard—the in-house attorneys regard these individuals as their clients. They call them their clients." Even were we to regard the attorney's comments as proper and admissible testimony, it fails to establish that the employees were authorized as required by the rule. The attorneys at the corporation may regard all or some of the corporation's employees as clients, but their own denomination does not turn them into authorized persons.

Further, while *Weisel*, 718 S.W.2d at 58, permits us to look to the documents to aide us in determining the existence of privilege, these documents do not establish the requisites of rule 503 on their faces.

Cigna failed to carry its burden of proof in establishing privilege as to these documents.[3]

**3.** These documents are:

11–22–89 To Charles H. Angelo from Ronald B. Myrter;
7–23–90 To Ronald B. Myrter from Charles H. Angelo;
7–31–90 To Charles H. Angelo from Ronald B. Myrter;
9–28–90 To Dan Rushton from Hank Pearce;
10–31–90 Fax coversheet to Ron Myrter from Charles Angelo;
11–12–90 To Charles Angelo from Yvette E. Thomas;
12–27–90 To Dan Rushton from Hank Pearce;
2–20–91 To Ronald B. Myrter from Scott N. Fitkin;
3–4–91 To Ron Myrter from Hank Pearce;
4–30–91 To Ronald B. Myrter from Hank Pearce;
4–30–91 To Hank Pearce from Ronald B. Myrter;
5–17–91 To Scott N. Fitkin from Ronald B. Myrter;
6–27–91 Fax coversheet to Scott Fitkin from Linda S. Kaiser;

### Attorney to Attorney

■ Several documents appear to have been written by an attorney to another attorney within the corporation. Clearly, following *Weisel*, 718 S.W.2d at 58, we can ascertain from the face of the documents themselves that these are privileged pursuant to TEX.R.CIV.EVID. 503(b)(5) (among lawyers representing the same clients). As to these documents, the writ of mandamus is granted.[4]

### FRAUD

■ McCorkle, the real party, also challenged Cigna's use of the attorney-client privilege based on the exclusion in rule 503(d)(1) (furtherance of crime or fraud). He alleged that Cigna engaged in fraud when it induced him to enter the contract to become Cigna's exclusive insurance salesman. Therefore, he argues, Cigna has lost its privilege because it acted fraudulently.

■ Rule 503 is an exception to the attorney-client privilege. Pursuant to this rule, the privilege is lost "[i]f the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a ... fraud." TEX.R.CIV.EVID. 503(d)(1); *Freeman v. Bianchi*, 820 S.W.2d 853, 861 (Tex.

10–30–91 To David Nein from Veronica A. Cubit;
X–X—91 To Ronald Myrter from Hank Pearce.

**4.** These documents are:

12–29–89 To Ed Ota from Ronald B. Myrter;
1–16–90 To Lee Routledge from Ronald B. Myrter;
2–6–90 To Ronald Myrter from Linda S. Kaiser;
2–23–90 To Ron Myrter from Lee Routledge (excluding attached document of 2–20–90 to Distribution from Spike McKeeta);
3–2–90 To Jane from Brian T. Guthrie;
3–7–90 To L. Kaiser, R. Myrter, & B. Wolke from Lee Routledge;
4–26–90 To Lee Routledge from Ronald B. Myrter;
12–27–90 To Ron Myrter from Lee Routledge;
1–7–91 To Lee H. Routledge from Ronald B. Myrter;
6–6–91 To Lee H. Routledge from Milton S. Wolke, Jr.

App.—Houston [1st Dist.] 1991, orig. proceeding). The party claiming the exception to the privilege bears the burden of establishing a prima facie case by proving "a violation sufficiently serious to defeat the privilege." *Freeman v. Bianchi,* 820 S.W.2d at 861. The prima facie case requirement is met when the proponent offers evidence establishing the elements of fraud and that the fraud "was ongoing or about to be committed *when the document was prepared." Id.* at 861–62 (emphasis added). Therefore, a mere allegation in the pleadings of fraud are insufficient: the fraud alleged to have occurred must have occurred at or during the time the document was prepared and in order to perpetrate the fraud. The fact that the plaintiff's cause of action involves fraudulent conduct is insufficient. The attorney-client privilege is lost only when the legal communications or services were obtained *in order to* commit or plan to commit a fraud. *See* TEX.R.CIV.EVID. 503(d)(1). The court may look to the documents themselves to determine whether a prima facie case has been established. *Freeman v. Bianchi,* 820 S.W.2d at 862. Only when the trial court finds a valid relationship between the document sought to be produced and the prima facie violation is the privilege lost. *Id.* at 861.

McCorkle's first amended petition alleged that he entered into an amendment of the original COMPAR agreement with Cigna as a result of fraud and that Cigna's actions in breaching the fiduciary and confidential relationships of the parties constitute constructive fraud. The trial court found that "Plaintiff has met his burden of proving the fraud exception to the attorney-client privilege contained in Rule 503(d)(1) of the Texas Rules of Civil Evidence."

McCorkle offered no evidence that supports the trial court's finding of fraud as set out by rule 503. The documents themselves do not reveal that the attorneys' services were obtained to enable or aid the commission of a fraud. The trial court abused its discretion in finding that such fraud had been established because there is no evidence that Cigna sought the lawyers' advice to commit a fraud.

## CONCLUSION

Cigna failed to carry its burden of proof as to most of the documents it sought to protect from discovery. Thus, we cannot say that the trial court abused its discretion in ordering production as to most of the documents. However, Cigna did establish its right to protection of the documents written by and to its own attorneys. McCorkle failed to establish the fraud exception to the attorney-client privilege. The writ of mandamus is granted in part as to the attorney to attorney documents (identified in footnote 4) and is denied as to the remainder of the documents.

PEEPLES, Justice, dissenting.

I respectfully dissent. I would grant the writ as to most of the documents.

I agree with the majority that the lawyer-to-lawyer communications are privileged and that respondent's order sustaining the crime-fraud exception to the privilege is absolutely unfounded.

I disagree with the majority's apparent holding that there must be specific evidence that each person who read each document must be a representative. Under *Weisel Enterprises, Inc. v. Curry,* 718 S.W.2d 56, 58 (Tex.1986), a court may look at the documents themselves to see whether privilege has been established.

Several documents are revisions by lawyers of proposed business letters written by nonlawyers. In each instance, the nonlawyer drafted a letter and sent it to house counsel for comments. Counsel made several revisions and returned the letter to the nonlawyer. In these circumstances it is obvious that the nonlawyer was authorized to seek the legal advice. It is inconceivable that in-house attorneys revise letters and give this kind of legal advice to employees who are not authorized to ask for it. Under *Weisel,* I would hold that as to such documents the privilege was established.

It is likewise apparent from most of the other documents, such as discussions by participants about legal problems that surfaced in company meetings, that the recipients of legal memos were authorized to receive the legal thoughts of house coun-

sel. The recipients were obviously employees who had attended meetings where legal issues were discussed. Is there any company in the world that has its employees abandon the work at their desks and go sit through meetings about legal issues outside their field, and then sends them memos from counsel about the legal issues discussed at the meetings? The majority says implicitly that Cigna should have presented testimony or an affidavit about the company's practice. That is nonsense.

The majority suggests that all the company needs to do is present testimony or affidavits. Undoubtedly, when businesses have read this opinion they will come to court with affidavits and testimony stating that each person who received a copy of each privileged document was authorized to obtain or act on the advice of the in-house lawyer. Trial courts will spend even more of their valuable time presiding over these hearings. Clients will pay their lawyers to be there. Litigants with cases to try on the merits will wait while the judge tries ever-lengthening discovery matters. The next appellate issue will be whether an appellate court must defer to a trial court's refusal to believe the company's evidence, even if it is uncontradicted. Thus, will our legal system continue to spin out of control, diverting scarce judicial resources to peripheral issues.

Concerning the trial court's fraud finding, I note that the documents show only that CIGNA is defending itself against McCorkle's fraud lawsuit, not that CIGNA sought legal advice to commit or plan a fraud.

The crime-fraud exception to the attorney-client privilege provides:

> There is no privilege ... [i]f the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud.

TEX.R.CIV.EVID. 503(d)(1). This exception is carefully worded to apply to *prospective* crimes or frauds. It applies where the client, with actual or constructive knowledge that contemplated or ongoing conduct is a crime or fraud, consults an attorney on the matter, and the conduct takes place or continues thereafter. But the privilege "is absolute as to communications made with an attorney as to *past* transactions and offenses." *Helton v. State*, 670 S.W.2d 644, 645–46 (Tex.Crim.App.1984), *quoting Williams v. Williams*, 108 S.W.2d 297, 299 (Tex.Civ.App.—Amarillo 1937, no writ) (emphasis added); *accord*, EDWARD W. CLEARY, MCCORMICK'S HANDBOOK OF THE LAW OF EVIDENCE § 95, at 199 (2d ed.1972); 81 AM. JUR.2D *Witnesses* § 399, at 359 (rev. ed. 1992); 8 JOHN H. WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 2298 (McNaughton rev. ed. 1961); *see also Anderson v. State*, 98 Tex.Crim. 449, 266 S.W. 159, 162 (1924); *Ott v. State*, 87 Tex.Crim. 382, 222 S.W. 261, 262–63 (1920). Merely to defend a lawsuit that alleges fraud does not trigger the exception. If it did, plaintiffs and defendants alike could routinely discover attorney-client communications about the underlying transaction by simply alleging fraud, and the attorney-client privilege would be hollow indeed.

The documents do not suggest in any way that CIGNA's in-house attorneys helped it to commit or plan a fraud in the future.

For the reasons stated, I would grant mandamus as to most of the documents.