# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00822-CV

**In re Harlan Levien, Stephen Levien, Kenneth Ives, and Parvin Johnson, Jr.**

### ORIGINAL PROCEEDING FROM BASTROP COUNTY

### M E M O R A N D U M   O P I N I O N

Harlan Levien and Stephen Levien are brothers who are beneficiaries under a family trust set up by their grandfather Arnold Levien. When the trust was created, three of Arnold's sons served as the trustees, but the current trustees are three of Arnold's grandsons: Kenneth Levien, Barry Levien, and Phillip Levien (the "Trustees"). Under the terms of the trust, income payments were made to Arnold's children and then to his grandchildren with the remainder of the funds to be disbursed to Arnold's great-grandchildren when the last great-grandchild living at the time of Arnold's death turns 35. Accordingly, as Arnold's grandchildren, Harlan and Stephen were entitled to income payments for a period of time but were not entitled to receive a disbursement from the remainder of the trust.

In addition to providing income payments to Arnold's children and grandchildren, the terms of the trust permitted the trustees to make discretionary payments to the beneficiaries. After being diagnosed with muscular dystrophy, both Harlan and Stephen sought funds from the trust in order to cover their healthcare costs. Because the Trustees initially denied the request, Harlan and Stephen filed a suit against the trust, and the parties entered into a settlement agreement under

which the trust gave Harlan and Stephen $350,000. In exchange, Harlan and Stephen agreed to relinquish their rights to income as beneficiaries to the trust and agreed to make no further requests from the trust. The settlement was finalized in July 2012.

Subsequent to the settlement being reached, Harlan and Stephen each initiated adoption proceedings to adopt an adult: Harlan sought to adopt Parvin Johnson, Jr., and Stephen sought to adopt Kenneth Ives. The adoption proceedings were initiated in district court in Bastrop County, and the final adoption orders were issued in October 2012.

After the adoptions were finalized, Johnson and Ives sought to obtain access to the funds that were available to the great-grandchildren of Arnold under the trust. In response, the Trustees filed lawsuits in Bastrop County and in New York against Harlan, Stephen, Johnson, and Ives (the "Leviens"). In their suits, the Trustees urged that Johnson and Ives were not eligible to receive distributions under the trust for several reasons, including that the adoptions were a sham and that Harlan and Stephen had a duty to disclose the proposed adoptions when they negotiated the prior settlement.

Relying on a venue provision under the terms of the trust, Harlan and Stephen asked the district court to stay the proceedings in Bastrop County until the suit pending in the New York trial court was resolved, and the district court agreed to stay the proceedings. In addition, Harlan and Stephen filed a motion to dismiss the New York suit, and after considering the parties' arguments, the New York trial court dismissed most of the Trustees' claims.[1] Further, in its order, the trial court

---

[1] In its order, the trial court did not dismiss the Trustees' claim that Harlan and Stephen breached the settlement agreement's confidentiality requirement by disclosing information to Johnson and Ives.

2

rejected the idea that Ives and Johnson could not be beneficiaries because their adoptions "were a sham." Specifically, the trial court explained that "[t]he only way the adopters would benefit from distributions made to Ives and Johnson is if the adoptees voluntarily share their assets with the adopters, a circumstance the court has no power to restrict." Regarding Harlan and Stephen's alleged failure to disclose the adoptions, the trial court explained that the claim would not provide the relief that the Trustees sought because their "claimed loss flows not from" the settlement agreement but "from the decedent's will, which does not exclude adopted children as beneficiaries." Further, the trial court explained that there was no allegation "that would give rise to a duty to disclose." Finally, in its order, the trial court explained that "[t]o the extent the trustees claim fraud existed in these adoptions, they also recognize that, if such is the case, it must be addressed by the courts which ordered the adoptions in Texas. This court agrees since it must accord the Texas adoption orders full faith and credit unless they were obtained by fraudulent misrepresentations."[2]

Subsequent to the New York trial court's ruling, the district court reinstated the proceeding in Bastrop County. After the case was reinstated, the Trustees issued discovery requests, including the following request that forms the basis for this mandamus:

> All diaries, notes, memoranda, journals, or calendars, . . . letters and correspondence, including electronic writings (for example, e-mail and text messages), or other written logs from you to any other individual or entity, regarding any matter relating

---

[2] In addition, the trial court explained it was obligated to give the adoptions full faith and credit unless they were obtained in "the absence of jurisdiction." However, the Trustees have not asserted that the district court did not have jurisdiction over the adoption applications, and our review of the record before us in this proceeding does not reveal any jurisdictional defects in the adoption orders.

3

to the adult adoption and/or any potential interest . . . under the Last Will and Testament of Arnold Levien.

The Leviens objected to this request on the ground that it impermissibly sought discovery regarding attorney-client communications. *See* Tex. R. Evid. 503. After conducting an in-camera inspection, the district court determined that an exception to attorney-client privilege applied to an email that was sent on August 20, 2012, from Ives to his attorney.[3] Essentially, the district court concluded that the email was subject to disclosure under the crime-fraud exception because it demonstrated fraud pertaining to the adoption proceedings. *See id.* R. 503(d)(1). During the hearing, the district court explained that after the proceeding in New York, the only issue left to decide is "whether this was a fraudulent adoption" and stated that it "might not have granted the adoption if [it] had seen" the email beforehand.

After the district court made this ruling, the Leviens filed this petition for writ of mandamus. We will conditionally grant the petition.

## MANDAMUS REQUIREMENTS

To obtain mandamus relief, the Leviens must show that the district court abused its discretion when it ordered them to release the contents of the email in dispute and that they lacked an adequate remedy by appeal. *See In re Southwestern Bell Tel. Co.*, 226 S.W.3d 400, 403 (Tex. 2007) (orig. proceeding) (citing *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004) (orig. proceeding)). As an initial matter, we note that the Leviens and the Trustees do not take

---

[3] The district court ordered the production of other documents as well, but the email is the only document at issue in this mandamus.

4

issue with whether the email falls under the attorney-client privilege and agree that if this Court determines that the district court abused its discretion by ordering the release of the contents of the email, there is no adequate remedy on appeal because appellate courts cannot cure discovery errors stemming from the release of privileged information. *See Walker v. Packer*, 827 S.W.2d 833, 843 (Tex. 1992) (orig. proceeding) (providing that there is no adequate appellate remedy "when the trial court erroneously orders the disclosure of privileged information which will materially affect the rights of the aggrieved party, such as documents covered by the attorney-client privilege"); *see also In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (orig. proceeding) (stating that mandamus is appropriate if trial court improperly orders disclosure of privileged information because error cannot be corrected on appeal and because client would lose benefit of privilege). *But see In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 469 (Tex. 2008) (orig. proceeding) (explaining that some privileged "matters may be so innocuous or incidental that the burden of reviewing an order to produce them outweighs the benefits of such a review").

However, the Trustees strongly urge that under the circumstances of this case, the district court did not abuse its discretion because the email falls under an exception to attorney-client privilege. A "trial court abuses its discretion if it acts without reference to any guiding rules or principles or acts in an arbitrary or unreasonable manner." *Reddy v. Hebner*, 435 S.W.3d 323, 326 (Tex. App.—Austin 2014, pet. filed). "On mandamus review of factual issues, a trial court will be held to have abused its discretion only if the relator establishes that the trial court could have reached but one decision, and not the decision it made." *In re Eurecat US, Inc.*, 425 S.W.3d 577, 582 (Tex. App.—Houston [14th Dist.] 2014, orig. proceeding). However, mandamus "review of legal issues

5

is not deferential," and a "trial court abuses its discretion if it clearly fails to analyze the law or apply the law to the facts of the case." *Id.* "A trial court has no discretion in determining what the law is or applying the law to the facts." *Icon Benefit Adm'rs II, L.P. v. Mullin*, 405 S.W.3d 257, 263 (Tex. App.—Dallas 2013, orig. proceeding [mand. denied]).

## DISCUSSION

In their petition, the Leviens assert that the email in question is a privileged communication and represents Ives's "understanding of the reasons for the adoption, the legal ramifications of the adoption, and the parties' future plans." In supporting the district court's ruling, the Trustees urge that the district court correctly determined that the email was not privileged because it falls under the crime-fraud exception. *See* Tex. R. Evid. 503(d)(1). Further, the Trustees urge that when resolving this mandamus, this Court "must look to the role the adoptions played in a much larger scheme to defraud the Trust . . . and circumvent the valid beneficiaries." Specifically, they allege that the Leviens engaged in fraud by nondisclosure by failing to disclose their intention to adopt two adults while negotiating the settlement and that the Leviens entered into a conspiracy to defraud the trust through the adoptions. Moreover, although they acknowledge that they have not yet seen the email,[4] the Trustees insist that based on the district court's ruling, the email pertains to the Leviens' intent to engage in the overall fraud scheme to access the trust funds by having Johnson and Ives be awarded a distribution under the trust and then transfer those funds to Harlan and Stephen. In addition, the Trustees contend that the fraudulent nature of the Leviens' plan is further

---

[4] We note that the email was filed with this Court under seal.

6

evidenced by the fact that the plan was allegedly initiated before Harlan and Stephen entered into the settlement agreement and refer to evidence regarding the chronology of the Leviens' communications with their lawyers from Texas and New York as support for that idea. Finally, the Trustees contend that the Leviens' attorneys had ethical obligations to disclose the true purpose of the adoptions. *See* Tex. Disciplinary R. Prof'l Conduct 1.05(c)(7) (authorizing lawyer to reveal confidential information when necessary to prevent client from committing crime or fraud), 3.03(a)(1), (2) (prohibiting lawyers from making false statements to tribunal or from failing to disclose fact necessary to avoid assisting "a criminal or fraudulent act").

Under the crime-fraud exception, attorney-client communication is not privileged when "the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud." *See* Tex. R. Evid. 503(d)(1); *see also In re XL Specialty Ins. Co.*, 373 S.W.3d 46, 49 (Tex. 2012) (orig. proceeding) (explaining that "[c]onfidential communications between client and counsel made to facilitate legal services are generally insulated from disclosure" and that "the attorney-client privilege promotes free discourse between attorney and client, which advances the effective administration of justice"). The party seeking the benefit of the crime-fraud exception has the burden of demonstrating a violation serious enough to overcome the privilege. *See In re AEP Tex. Cent. Co.*, 128 S.W.3d 687, 692 (Tex. App.—San Antonio 2003, orig. proceeding). To satisfy this burden, the party seeking discovery must make a "prima facie showing that the client was contemplating the commission of a fraud or crime." *Volcanic Gardens Mgmt. Co. v. Paxson*, 847 S.W.2d 343, 347 (Tex. App.—El Paso 1993, orig. proceeding). "A prima facie showing is sufficient if it sets forth

7

evidence that, if believed by the trier of fact, would establish the elements of a fraud or crime that 'was ongoing or about to be committed when the document was prepared.'" *In re General Agents Ins. Co. of Am.*, 224 S.W.3d 806, 819 (Tex. App.—Houston [14th Dist.] 2007, orig. proceeding) (quoting *Coats v. Ruiz*, 198 S.W.3d 863, 876 (Tex. App.—Dallas 2006, no pet.)). "The fact that the plaintiff's cause of action involves fraudulent conduct is insufficient. The attorney-client privilege is lost only when the legal communications or services were obtained *in order* to commit or plan to commit a fraud." *Cigna Corp. v. Spears*, 838 S.W.2d 561, 569 (Tex. App.—San Antonio 1992, orig. proceeding); *see also id.* (specifying that courts may "look to the documents themselves" when deciding if prima facie case has been made). Moreover, "a mere allegation in the pleadings of fraud is insufficient," *Coats*, 198 S.W.3d at 877, and the privilege is only lost if "the trial court finds a valid relationship between the document sought to be produced and the prima facie violation," *Cigna Corp.*, 838 S.W.2d at 569. In this context, fraud includes the commission or attempted commission "of fraud on the court or on a third person, as well as common law fraud and criminal fraud." *Volcanic Gardens*, 847 S.W.2d at 348.

Although the Trustees characterize their claims as involving an overarching fraud scheme, the particulars of the scheme center on allegations of fraud when Harlan and Stephen entered into the settlement agreement without disclosing their intentions to adopt Ives and Johnson and when Harlan and Stephen asked the district court to grant their adoption requests. Regarding the settlement agreement, as set out above, the issue of any fraud regarding the settlement agreement was not before the district court after the case was reinstated in Bastrop County following the ruling by the trial court in New York. In fact, the trial court in New York addressed that issue and

8

determined that Harlan and Stephen did not have a legal obligation to disclose their intentions to adopt during the settlement negotiations.[5]  In any event, the email at issue between Ives and his attorney was sent weeks after the settlement agreement had been finalized.  In other words, the information that Ives sought to convey to or to receive from his attorney occurred well after any alleged fraud was committed by Harlan and Stephen when entering the settlement agreement.  *See In re Small*, 346 S.W.3d 657, 666 (Tex. App.—El Paso 2009, orig. proceeding) (explaining that for exception to apply, alleged fraud "must have happened at or during the time the document was prepared, and the document must have been created as part of perpetuating the fraud").

Regarding the Leviens' adoption requests, the Trustees assert that the email at issue pertains to the propriety of those requests because it will help establish that Harlan and Stephen only sought to adopt Ives and Johnson for the allegedly improper purpose of gaining access to the funds in the trust.  However, none of the provisions of the Family Code governing adult adoptions specify that the intent of the parties involved in the adoption proceeding is a relevant consideration, that the trial court may inquire into the parties' intent, or that the trial court may deny the request if the reason for the request is somehow improper.  *See* Tex. Fam. Code §§ 162.501-.507.  On the contrary, the only considerations seem to be whether the petitioner resides in this State, *id.* § 162.501, whether the petition was filed in an appropriate district court or statutory county court, *id.* § 162.502, whether the petitioner's spouse joined the petition, *id.* § 162.503, whether the adult to be adopted consented in writing, *id.* § 162.504, and whether the "petitioner and the adult to be adopted" were present at

---

[5] We note that while this mandamus was pending, the trial court in New York issued an opinion enjoining any "fraud-by-nondisclosure claim that centers on the negotiation and execution of the . . . settlement [agreement]" because those "claims were made and dismissed here."

9

the hearing, *id.* § 162.505. Moreover, provided that those requirements are met, the court *must* grant the adoption. *Id.* § 162.506(a) (providing that "court shall grant the adoption if the court finds that the requirements for adoption of an adult are met"). Accordingly, the intent of the parties to the adoption does not bear upon the adoption process, and for that reason, evidence establishing the Leviens' purpose for pursuing the adult adoptions cannot establish a prima facie showing that the Leviens were contemplating the commission of a fraudulent adoption.

Even assuming that intent could be a relevant consideration in this context and that the communication at issue reveals an intent by Ives to agree to the adoption in order to facilitate the transfer of money from the trust to himself and then perhaps to Stephen, that information could not establish a prima facie case for fraud because the "adult adoption provisions appear to exist largely, if not entirely, for the purpose of creating heirship in non-family members for inheritance purposes." *See Gonzales v. Brazos River Harbor Navigation Dist.*, No. 14-99-00272-CV, 2000 Tex. App. LEXIS 5702, at \*18 (Tex. App.—Houston [14th Dist.] 2000, pet. denied); *see also In re Ray Ellison Grandchildren Trust*, 261 S.W.3d 111, 121-25 (Tex. App.—San Antonio 2008, pet. denied) (recounting historical changes made to governing statutes to establish that adopted individuals, including individuals adopted as adults, could inherit from their adoptive parents and inherit through their adoptive parents from individuals who were strangers to adoption). Accordingly, evidence showing that the Leviens' sole purpose for effectuating the adoptions was to result in a transfer of money from the trust cannot serve as a basis for concluding that the adoptions were fraudulent or that the Leviens had committed a fraud on the district court when they pursued the adoptions.

10

Although we recognize the Trustees' assertion that the use of the adult-adoption statutes in this case might ultimately result in a transfer of money that could be contrary to their grandfather's intent when establishing the trust, we cannot conclude that the Trustees made a prima facie showing that a fraud was ongoing or about to be committed when Ives sent the email. *See In re General Agents Ins. Co. of Am.*, 224 S.W.3d at 819. Accordingly, we must conclude that the district court abused its discretion when it ordered the Leviens to disclose the contents of the email under the crime-fraud exception.

## CONCLUSION

Having determined that the district court abused its discretion by ordering the disclosure of the email and that the Leviens do not have an adequate remedy by appeal, we conditionally grant the Leviens' petition for writ of mandamus and direct the district court to vacate the portion of its order requiring the disclosure of the email. *See* Tex. R. App. P. 52.8(c). The writ will only issue if the district court fails to enter a modified order in accordance with this opinion.

David Puryear, Justice

Before Justices Puryear, Pemberton, and Bourland
  Dissenting Opinion by Justice Pemberton

Filed: April 30, 2015

11